**Gregory LOTT, Plaintiff,**

v.

**Ralph COYLE, Warden, Defendant.**

**No. 1:95 CV 2642.**

United States District Court,
N.D. Ohio,
Eastern Division.

March 11, 1998.

---

Randall L. Porter, Lori Leon, Office of Public Defender Ohio Public Defender Com'n, Columbus, OH, Mark R. DeVan, Berkman, Gordon, Murray, Palda & DeVan, Cleveland, OH, for Plaintiff.

Michael L. Collyer, Office of Asst. Atty. Gen., Cleveland, OH, for Defendant.

## MEMORANDUM & ORDER

O'MALLEY, District Judge.

Petitioner Gregory Lott moves this Court to reconsider its. Order of June 19, 1997, which held that the amendments to Chapter 153 made by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") would apply to this case.[1] For the reasons set forth below, that motion is **DENIED**.

### I.

In support of his motion, Petitioner cites *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), decided on June 23, 1997. In *Lindh*, the Supreme Court, in a 5–4 decision, held that the AEDPA does not apply retroactively to habeas cases filed prior to the statute's enactment.

The Supreme Court specifically stated that "[t]he statute reveals Congress's intent to apply the amendments to chapter 153 only to such cases as were filed after the statute's enactment. . . ." *Id.* 117 S.Ct. at 2063. The Court cited § 107(c) of the AEDPA, which provides that "Chapter 154 . . . shall apply to cases pending on or after the date of enactment of this Act," and "read th[at] provision of § 107(c) . . . as indicating implicitly that the amendments to chapter 153 were assumed and meant to apply to the general run of habeas cases only when those cases had been filed after the date of the Act." *Id.*

As it must, Respondent concedes that the rationale used by this Court in its earlier decision was erroneous under *Lindh.* Nonetheless, respondent opposes petitioner's motion, contending that, though its earlier rationale may have been wrong, the result this Court reached—*i.e.,* that the Chapter 153 amendments to the AEDPA apply to this action—remains correct. Respondent contends that, because Lott had filed only a notice of intent to file his habeas petition and motion for appointment of counsel before the enactment of the AEDPA, which was signed into law on April 24, 1996, and did not file his petition until February 3, 1997, more than nine months after the AEDPA went into effect, the provisions of the AEDPA necessarily apply to that petition. Respondent thus argues that a habeas case is not "pending" for purposes of determining whether the AEDPA governs the action until an application for a writ of habeas corpus is filed.

In support of this proposition, respondent cites to Justice O'Connor's separate opinion in *McFarland v. Scott,* 512 U.S. 849, 862, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994) (O'Connor, J., concurring in part and dissenting in part), where she refers to Habeas Corpus Rule 2(a), 28 U.S.C. §§ 2254(d), 1914(a), and 2242 as indicative of the fact that a habeas proceeding is considered to be pending only upon the filing of an application for a writ of habeas corpus. Respondent also points to the decisions of the Fifth, Seventh, and Ninth Circuit Courts of Appeals, all of which have

1. This Court reached the same conclusion regarding the retroactivity of the AEDPA in *Scott v. Anderson,* 958 F.Supp. 330 (N.D.Ohio 1997). On October 27, 1997, this Court vacated that part of its Order holding § 104 of the AEDPA applicable

to that case. Unlike this case, however, in *Scott* there was no issue of whether the petitioner's case was pending prior to the effective date of the AEDPA.

concluded that a motion for the appointment of counsel does *not* give rise to a "pending" case for purposes of determining the applicability of the AEDPA. *See Calderon v. U.S. Dist. Ct. Cent. Dist. Cal.*, 128 F.3d 1283, 1287 n. 3 (9th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 899, —— L.Ed.2d—— (1998); *Nobles v. Johnson*, 127 F.3d 409, 413–15 (5th Cir.1997); *Holman v. Gilmore*, 126 F.3d 876, 879–80 (7th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1169, 140 L.Ed.2d 179 (1998); *Williams v. Cain*, 125 F.3d 269, 273–74 (5th Cir.1997).[2]

Petitioner argues that the motion for the appointment of counsel was sufficient to generate a "pending case" for purposes of determining whether the AEDPA applies to his case. For support, petitioner emphasizes that, in *Lindh*, the Court used the terms "cases pending" (the language used in § 107(c)) and "cases filed" throughout its opinion, and used the term "application" in only a handful of instances. As Petitioner acknowledges, because the petitioner in *Lindh* had filed an application for a writ before the AEDPA's enactment, the meaning of that term was not at issue, and the Court, therefore, did not define what it meant, or,

more precisely, what it believed Congress meant, by the use of that term.[3] Petitioner, however, points to the majority's definition of the term in *McFarland*, and urges that definition upon this Court.[4]

In *McFarland*, the Supreme Court held that "a capital defendant may invoke [his] right to a counseled federal habeas corpus proceeding by filing a motion requesting the appointment of habeas counsel, and that a district court has jurisdiction to enter a stay of execution where necessary to give effect to that statutory right." 512 U.S. at 859.[5] The Court reached this holding by construing 21 U.S.C. § 848(q)(4)(B) in conjunction with related provisions. The Court first concluded that "the right to appointed counsel adheres prior to the filing of a formal, legally sufficient habeas corpus petition," because "a 'post conviction proceeding' *within the meaning of § 848(q)(4)(B) is commenced* by the filing of a death row defendant's motion requesting the appointment of counsel." *McFarland*, 512 U.S. at 854–55 (emphasis added). The Court then determined that the right to appointed counsel would be meaningless unless the district court also were allowed to stay the petitioner's execution pur-

---

2. As Lott points out, the district courts within the Sixth Circuit to have considered the issue have come to the opposite conclusion. *See Cooey v. Anderson*, No. 5:96CV797 (N.D.Ohio Jan. 16, 1998) (Bell, J.); *Spisak v. Coyle*, 1:95CV2675, slip op. (N.D.Ohio Aug. 23, 1997) (Oliver, J.); *Mills v. Anderson*, No. C196423, slip. op. (S.D.Ohio Aug. 5, 1997) (Dlott, J.); *Murphy v. Ohio*, No. 3:96CV7244, slip. op. (N.D.Ohio July 29, 1997) (Katz, J.).

3. Thus, it was unnecessary for the Court to explain whether it considered "case pending" to be a synonym for "application for a writ," (and thus used the terms interchangeably), or, instead, whether it used the term "cases pending" in order to capture a wider variety of proceedings than encompassed by the more limited "application for a writ."

4. Lott emphasizes that the Seventh Circuit's decision in *Holman* was authored by Judge Easterbrook, the same Judge who wrote the Seventh Circuit's opinion in *Lindh*, which was reversed by the Supreme Court. The Court does not attach any significance to this fact, and fails see how or why it should have any bearing on the correctness of the decision in *Holman*. Judge Easterbrook, after all, is one of the federal judiciary's most talented and well-respected jurists. Perhaps Lott intends to suggest that Judge East-

erbrook, stung by the reversal in *Lindh*, is eager to limit *Lindh*'s reach, and, thus, is predisposed to any argument that will lead to that result. This implies a personal stake in or personal attachment to legal opinions that few jurists share, however.

Even if the Court were to accept this implication, moreover (which it does not), Lott's point is weakened by the fact that the Ninth Circuit, whose approach in *Brown v. Vasquez*, 952 F.2d 1164 (9th Cir.1991), was *adopted* by the Supreme Court in *McFarland*, followed *Holman* (explicitly citing the case), and held that a motion to appoint counsel does not constitute a "pending case" for purposes of determining the applicability of the AEDPA. *See Calderon*, 128 F.3d at 1287 n. 3.

5. The *McFarland* Court construed 21 U.S.C. § 848(q)(4)(B), which provides:

"In any post conviction proceeding under section 2254 or 2255 of title 28, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with paragraphs (5), (6), (7), (8), and (9)."

suant to 28 U.S.C. § 2251 (and thus provide the attorney with sufficient time to prepare an adequate petition) and therefore held that "once a capital defendant invokes his right to appointed counsel, a federal court also has jurisdiction under § 2251 to enter a stay of execution." *Id.* at 858.[6] In reaching this conclusion, it was necessary for the Court to reject the respondent's argument that a habeas corpus proceeding is not "pending" until a habeas petition actually has been filed. *Id.* at 858.

In Petitioner's view, if a habeas corpus proceeding is considered to be pending upon the filing of a motion for the appointment of counsel, for purposes of vesting the federal court with jurisdiction to enter a stay of execution under § 2251, then filing a motion for the appointment of counsel necessarily generates a "pending case" for purposes of determining the AEDPA's applicability under *Lindh* as well.

## II.

That "pending" was given such an expansive meaning in *McFarland* does not lead inexorably to the conclusion that it must be given the same broad scope for purposes of the AEDPA's applicability. *See Atlantic Cleaners & Dyers v. United States,* 286 U.S. 427, 433, 52 S.Ct. 607, 76 L.Ed. 1204 (1932) ("It is not unusual for the same word to be used with different meanings in the same act...."); Cook, *"Substance" and "Procedure" in the Conflict of Laws,* 42 Yale L.J. 333, 337 (1933) ("The tendency to assume

that a word which appears in two or more legal rules, and so in connection with more than one purpose, has and should have precisely the same scope in all of them, runs all through legal discussions. It has all the tenacity of original sin and must constantly be guarded against."). In fact, the Supreme Court previously has cautioned against assuming that there is a single, all purpose meaning for the term "pending": " 'Pending' is simply not a term of art that unambiguously carries with it a meaning precisely suited for this situation." *International Union of Electrical, Radio and Mach. Workers v. Robbins & Myers, Inc.,* 429 U.S. 229, 243, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976) (considering the meaning of "pending" in the context of applicability of amendments to the Equal Employment Opportunity Act of 1972). In addition, several circuits struggled with the meaning of a "pending" case in determining the applicability of the 1985 amendments to the Equal Access to Justice Act. *See United States v. 1002.35 Acres of Land,* 942 F.2d 733 (10th Cir.1991) (deciding when a case is no longer pending such that the amendments would be inapplicable); *Western Newspaper Publishing Co., Inc. v. NLRB,* 821 F.2d 459 (7th Cir.1987) (same); *Russell v. National Mediation Bd.,* 775 F.2d 1284 (5th Cir.1985) (same).

Clearly, "pending" is a malleable term whose meaning depends on the specific context in which it is used and the purposes to which it is being put. Because neither *Lindh*[7] nor *McFarland* definitively answers

---

**6.** 28 U.S.C. § 2251 permits a "judge of the United States before whom a habeas corpus proceeding is *pending*" to stay the state court proceeding "for any matter involved in the habeas corpus proceeding." (emphasis added).

**7.** *Lindh* offers implicit support for both the expansive definition of "pending" employed in *McFarland* and the traditional, limited definition, but does not resolve the question either way.

In support of the view that a case is "pending" under *Lindh* only when an "application for a writ of habeas corpus" has been filed, one could point to the manner in which the majority framed the issue before the Court. According to the majority, "[t]he issue in this case is whether [the AEDPA] governs *applications* in noncapital cases that were already pending when the Act was passed." 117 S.Ct. at 2061 (emphasis added). Because the majority framed the issue in terms of whether the AEDPA "governs applica-

tions" at the outset of its opinion, it is plausible to read "cases pending," as used later in the opinion, as a synonym for "application for a writ." *See Calderon v. U.S. Dist. Ct. Cent. Dist. Cal.,* 127 F.3d 782, 785 (9th Cir.1997) (stating that, "while the Court [in Lindh] repeatedly referred to 'cases,' the *context* of that reference was matters where a habeas corpus *application* was on file") (emphasis added).

Under this reading, the Court's subsequent, nearly exclusive use of the term "cases pending" can be explained as a function of literary style. The Court, after all, was discussing whether the AEDPA applied to cases pending before its effective date. Thus, when discussing whether the AEDPA applied, it would have been awkward to use the phrase "application for a writ" where that phrase would closely follow the word "application" or one of its variants in the same sentence. For instance, "Congress had no need to make any special provisions for their applica-

the question of what constitutes a "pending" habeas proceeding for purposes of the applicability of the AEDPA, the Court must examine the usual and ordinary meaning of "pending," the reasons behind the Supreme Court's departure from that definition in *McFarland*, and whether the context of this case and the purposes of the AEDPA dictate that the Court construe the term as it was construed in *McFarland*. *See Flores v. Rios*, 36 F.3d 507, 513 (6th Cir.1994) (stating that "[t]he fundamental principle of statutory construction (and indeed, of language itself) [is] that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used.'") (citation omitted).

It is important not to lose cite of the fact that what the Court ultimately is interpreting is the statutory language of § 107. The Supreme Court's holding in *Lindh*, after all, was based on its interpretation of the congressional intent behind the AEDPA, and, more specifically, on what Congress intended by excluding any mention of whether § 153 would "apply to cases pending on or after the date of [the Act's] enactment" in § 107. Thus, the issue here, as in *Lindh*, revolves around the language of § 107. Consequently, it is appropriate to turn to principles of statutory construction to decide the question before this Court.

In determining the meaning of a statutory provision, the words used in that provision are given their usual and ordinary meaning, unless a contrary meaning is suggested by the particular context in which those words are used. *See Moskal v. United States*, 498 U.S. 103, 108, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990) ("In determining the scope of a statute, we look first to its language, giving the words used their ordinary meaning."). *Cf.* Cass R. Sunstein, *Legal Reasoning and Political Conflict* 187 (1996) ("It seems reasonable to say that judges should rely on the

ordinary meaning of statutory language, taken in the context of the statute as a whole and the period in which it was enacted."). According to Black's Law Dictionary, "an action or suit is 'pending' from its inception until the rendition of final judgment." Black's Law Dictionary 11134 (6th ed.1990). Alternatively, Black's states that "[a]n action is 'pending' after it is commenced by either filing a complaint with the court or by the service of a summons." *Id.* (citation omitted). Black's defines "inception" as the "[c]ommencement" or "beginning of a cause or suit in court," *id.* at 761, and a "[c]ivil action in most jurisdictions is commenced by filing a complaint with the court." *Id.* at 268 (emphasis in original removed).

While the dictionary definition does suggest that an actual complaint, or its analogue, must be filed before a suit will be considered "pending," there also is language within those definitions which could support a contrary argument; moreover, there are other dictionaries, with different definitions, and the Court suspects that there are enough permutations of the meaning of "pending" within those dictionaries to support either position in this litigation. Thus, while the dictionary definition is a useful starting place, the Court recognizes that it is "not to make a fortress out of the dictionary." *Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir.) (Hand, J.), *aff'd*, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945). *See also Flores v. Rios*, 36 F.3d at 513 ("Laws cannot be interpreted by snatching single words out of statutory sentences and matching these words—without regard for context—up against one of the many definitions of that word found in the advocate's dictionary of choice."). Rather, to determine what Congress meant by "pending cases," it is necessary to consider the purpose for which the AEDPA was enacted, the objects it was designed to accomplish, and

tions to pending capital habeas cases," 117 S.Ct. at 2067, sounds better than "Congress had no need to make any special provision for their application to applications for a writ." In fact, with but one exception, whenever the phrase "pending case" or some similar expression is used, that phrase always is preceded by the word "apply" or one of its variations (*e.g.*, application, applied, applying).

Of course, a contrary—and equally plausible—reading is possible as well. If style is what the majority was concerned about, it could have avoided the double word dilemma by substituting the word "govern" for the word "apply," as it did in the first paragraph of the opinion.

All that can be said, then, is *Lindh* used the term "cases pending," which is the same term used in § 107. That is the extent of its significance in this case.

the context in which the language is used. *Flores*, 36 F.3d at 513; *Cabell*, 148 F.2d at 739; Sunstein, *Legal Reasoning* at 187 (recommending that, when the words used are ambiguous, "courts should examine the particular setting and try to identify legislative *purposes*, understood as general goals, and legislative *intentions*, understood as particular judgments").

§ 107 is but a single part of a larger framework of rules and statutory provisions governing habeas corpus proceedings. Thus, the Court's attempt to divine the meaning of "cases pending" should be informed by the way it appears to be understood within that framework. For instance, pursuant to Rule 3 of the Federal Rules of Civil Procedure, "[a] civil action is commenced by filing a complaint with the court." Fed.R.Civ.P. 3.[8] Because an application for a writ of habeas corpus "is analogous to filing a complaint," it is only the application for the writ, therefore, that *ordinarily* would give rise to a pending case. *Cf. Holman*, 126 F.3d at 880 (noting that, under this definition, "a motion for counsel is not itself a petition, because it does not call for (or even permit) a decision on the merits[,][a]nd it is 'the merits' that the amended § 2254(d)(1) is all about").[9] Indeed, in *McFarland*, Justice O'Connor dissented from that portion of the opinion holding that a motion for the appointment of counsel constituted a "pending" case under § 2251 precisely because that definition ran against the understanding of the term which pervaded the statutory provisions and rules governing habeas actions. *McFarland*, 512 U.S. at 862 ("Although the statute does not specifically identify when 'a habeas corpus proceeding is pending,' ... other provisions of the statute show that there is no 'pending' habeas corpus proceeding until an application for habeas corpus has been filed, which is the mechanism for 'institut[ing]' a proceeding under the statute.").[10] Throughout the rules and statutory provisions relating to habeas actions, a "pending case" generally is understood to be generated only by an actual application for a writ.

The majority in *McFarland* did not dispute that this is the way the term is generally understood. Nor did it reject out of hand that such an understanding may be appropriate or necessary in a variety of other circumstances. Rather, it held, essentially, that such a definition was presumptively correct, but that, where a literal application of the definition would result in a fundamentally unfair, inequitable or absurd result, that lit-

**8.** Rule 11 of the Rules Governing 2254 cases provides that "[t]he Federal rules of Civil Procedure, to the extent that they are not inconsistent with these rules, may be applied, when appropriate, to petitions filed under these rules."

**9.** This is also the meaning suggested by the Advisory Committee Notes to the rules governing habeas corpus proceedings. The Advisory Committee Note to Rule 1 of the Rules governing § 2255, for instance, draws a distinction between a § 2254 habeas corpus action and a § 2255 *motion* attacking a prisoner's sentence: "a motion under § 2255 is a further step in the movant's criminal case," while a § 2254 action is "a *separate civil action.*" *Cf. Holman*, 126 F.3d at 880 (pointing to Rule 3 of the Rules Governing § 2255 Proceedings, which, unlike a § 2254 petition, does not require a filing fee for the initiation of proceedings, since they are treated not as separate actions, but as continuations of the criminal proceeding). Petitioner misunderstand's *Holman*'s citation of Rule 3 of the Rules governing § 2255 proceedings. Petitioner complains that the *Holman* "Court cited Rule 3 for the legal conclusion that a § 2255 case is not considered pending until the Motion itself is filed." Petitioner's Response to the Warden's Notice of Additional Authority at 3. That is not the proposition for which *Holman* cited Rule 3. Rather, the reference to Rule 3 was meant to illustrate that, whereas the filing of a *petition* is necessary to commence a § 2254 action, the filing of a *motion* is *not* necessary to create a pending § 2255 action since it is merely a "continuing part of a criminal proceeding." That this was the purpose of the Court's reference to Rule 3 is evidenced by the fact that the petitioner brought a § 2254 habeas corpus action attacking a state court judgment, not a § 2255 action attacking a federal sentence. As § 2255 was not in issue, the only reason for citing it would be to illustrate a point, and that is what the Court did.

**10.** Justice O'Connor first pointed to the language of 2254(d), which refers to "any proceeding instituted in a Federal court by an application for a writ of habeas corpus." 28 U.S.C. § 2254(d). She next pointed to 28 U.S.C. § 1914(a), which, said Justice O'Connor, "indicates that the institution of a proceeding requires the filing of an 'application.'" 512 U.S. at 862. After pointing to several other provisions, Justice O'Connor concluded that "[t]his consistent textual focus on the existence of an application leads me to conclude that the district court's authority to issue a stay pursuant to 2251 also requires the filing of an 'application.'" *Id.* at 863.

eral understanding must give way to a more flexible and forgiving definition. Thus, it would be overstating the breadth of *McFarland* to say, as Petitioner does, that it solved the question of what constitutes a "pending" case for all situations and in every circumstance. In other words, it would appear that the general rule is that a habeas case is "pending" only upon the filing of a petition, but that there are exceptions to that general rule.[11] *McFarland* carved out one such exception. Thus, contrary to petitioner's characterization of the case, *McFarland* did not announce a rule that applies in every circumstance, it announced an exception to the rule that applies only in limited circumstances. The issue for petitioner, accordingly, is whether his circumstances fit within the *McFarland* exception, or warrant the creation of another exception. To the extent *McFarland* is even relevant to the issue now before the Court, therefore, its relevance is confined to the issue of what types of inequities and practical considerations may necessitate a deviation from the usual understanding of a "pending" case.

Within the *McFarland* majority opinion itself are limitations on the scope of the Court's holding. Those limitations are evidenced in the majority's response to Justice Thomas' dissent, in which he criticized the majority for imposing different standards on capital and noncapital defendants. As the Court observed, while capital defendants have a mandatory right to counsel under § 848(q)(4)(B), "noncapital defendants have no equivalent right to the appointment of counsel in federal habeas corpus proceedings ... [and thus] their habeas corpus proceedings typically will be initiated by the filing of a habeas corpus petition." *McFarland,* 512 U.S. at 857 n. 3. In other words, in the context of a noncapital defendant, the traditional understanding of when such a proceeding is commenced is the only one that makes sense, given the logic of the statutory framework. Thus, the definition to be used is partially a function of practical considerations.

The breadth of the definition is also a function of the extent to which concerns of fairness and equity are implicated. This is revealed by the manner in which the Court approached and analyzed the issue in *McFarland.* After concluding that the motion for the appointment of counsel constituted a "habeas corpus proceeding" under § 848(q)(4)(B), the Court did not then simply assume, as petitioner asks this Court to do here, that the motion to appoint counsel *automatically* gave rise to a "pending" case for purposes of an entirely separate statutory provision. Rather, the Court's conclusion that the motion to appoint counsel constituted a "pending" case under section § 2251 was premised upon its determination that such a reading was the only way of making the right to counsel under § 848(q)(4)(B) meaningful, or, for that matter, useful. If the district court did not have jurisdiction to stay the defendant's execution, the defendant could be executed before his newly appointed counsel had sufficient opportunity to file an adequate petition. Such a result would fly in the face of the congressional intent behind the statutory right to counsel. *See* 512 U.S. at 859 ("By providing indigent capital defendants with a mandatory right to qualified legal counsel in these proceedings, Congress has recognized that federal habeas corpus has a particularly important role to play in promoting fundamental fairness in the imposition of the death penalty."). It was for this limited reason that the Court read § 848 and § 2251 *in pari materia.* *McFarland* thus stands for the following principle: a broader and more inclusive definition of "pending case" may be used where compelling equitable circumstances and legislative intent so demand.

This is precisely how subsequent courts, including the Sixth Circuit, have interpreted *McFarland.* In *Steffen v. Tate,* 39 F.3d 622 (6th Cir.1994), the Sixth Circuit acknowledged that, in *McFarland,* "the Supreme Court did rule against an interpretation of 28 U.S.C. § 2251 that would require the actual filing of a habeas petition" before the pro-

---

**11.** Thus, it is no argument to say, as petitioner does, that Justice O'Connor's view should not be followed *in this case* because it lost out in *McFarland.* Justice O'Connor's view was rejected only in the context of that case; there is no language indicating that the majority categorically rejected such an analysis in cases in the absence of the concerns presented there.

ceeding would be considered *"pending"* such that the federal court would have jurisdiction to say an execution. 39 F.3d at 627. Nonetheless, the Court concluded that

> the *McFarland* decision does not create a generalized repeal of the requirement that a habeas petition must be *pending* for a federal court to stay an execution. Rather, it holds only that in a limited situation where a truly unrepresented prisoner requires representation in order to prepare a competent habeas corpus petition, a federal court is not devoid of jurisdiction to issue such an order in aid of that particular end.

39 F.3d at 628 (emphasis added). Because the defendant in *Steffen* was represented by counsel, and, thus, the equitable concerns of *McFarland* were absent, the Court held that the district court did not have jurisdiction to stay the execution under § 2251 until the defendant filed an actual petition. In other words, the literal understanding of a "pending" case applied.

The Sixth Circuit's decision in *In re Parker*, 49 F.3d 204 (6th Cir.1995), also emphasized the limited scope of *McFarland*. In *Parker*, the Sixth Circuit, on a petition for mandamus, reviewed a district court's grant of a stay of execution under § 2251. The district court concluded that it had jurisdiction to enter a stay under *McFarland* because the defendant had moved for the appointment of counsel pursuant to § 848. The problem, however, was that the defendant already was represented by counsel, arguably rendering the rationale behind the decision in *McFarland* inapplicable.

The Sixth Circuit rejected the petitioner's superficial reading of *McFarland*, and ad-

monished the district court *not* to jump to the conclusion that a case is pending whenever a defendant has filed a motion for the appointment of counsel. In concluding that the district court's entry of a stay was erroneous, the *Parker* Court distinguished *McFarland*, stating that it did not "stand for the proposition that an already well-represented prisoner may invoke the 'stay' jurisdiction of a federal court by seeking prepetition appointment of counsel who already represents him." *Id.* at 207. In such circumstances, suggested the Court, only the filing of a petition for habeas relief would constitute a "pending" habeas proceeding that would give the district court jurisdiction to enter a stay pursuant to § 2251. *Id.* *Accord, Williams v. Cain*, 125 F.3d at 274 ("[W]e believe that *McFarland* was intended to resolve practical procedural problems in such a way that unrepresented, indigent defendants could effectively enjoy the right to counsel established by 21 U.S.C. § 848(q)"); *Nobles v. Johnson*, 127 F.3d at 414 (following *Williams*); *Calderon v. United States District Court*, 128 F.3d at 1287 n. 3 (noting that, while *McFarland* "did hold that for certain purposes a habeas proceeding commences with the filing of [a request for the appointment of counsel] ... those purposes were *narrowly confined* to the operation of 21 U.S.C. § 848(q)(4)(B)").

## III.

As in *Steffen* and *Parker*, the fundamental fairness concerns that inspired the Supreme Court's decision in *McFarland* are absent here, and a departure from the usual understanding of a "pending" case is, thus, unwarranted.[12] Whether the motion for appoint-

---

**12.** Petitioner seeks to diminish the importance of *Steffen* and *Parker* by arguing that they are distinguishable on their facts. While the factual circumstances of this case certainly differ from those in *Steffen* and *Parker*, the same can be said of *McFarland*, upon which petitioner's motion is premised. Thus, the argument proves too much. Moreover, the question is not simply whether the cases are distinguishable, but whether they are distinguishable or analogous in *relevant* respects. *See* Sunstein, *Legal Reasoning* at 71–74. Both *Steffen* and *Parker* are similar to this case in one important respect: the compelling fairness considerations so pronounced in *McFarland* are absent. Thus, it is *McFarland*, not *Steffen* or *Parker*, which is distinguishable in the one aspect of

any relevance here. In a further effort to diminish the significance of these cases, Petitioner claims that in neither *Steffen* nor *Parker* did the Sixth Circuit "hold that the district courts lacked jurisdiction over the cases before them," but only held that the district courts had abused their discretion by entering stays of execution. This assertion is contradicted by the plain language of the cases. For instance, in the concluding paragraph of *Steffen*, the Court expressly held that "the district court was without jurisdiction to stay the execution." 39 F.3d at 628, a conclusion that would have been impossible to reach without first determining that the motion to appoint counsel did *not* constitute a "pending" case under § 2251.

ment of counsel initiated a habeas proceeding such that petitioner's case was pending at the time of the AEDPA will determine the law to be applied to his petition, not his ability or right to pursue habeas relief. *See Calderon,* 127 F.3d at 785. In fact, it would seem incongruous to subject two otherwise similarly situated petitioners, both of whom filed their petitions after the effective date of the AEDPA, to different legal standards based on the fortuity that one moved to have a lawyer appointed prior to the enactment of the AEDPA, while the other did not. *Cf. Calderon,* 128 F.3d at 1287 n. 3 ("A prisoner who had not requested counsel before April 24, 1996, would certainly have to apply for a writ within the limitations period. We merely hold that those provisions apply equally to prisoners who had requested counsel but not applied for a writ as of April 24, 1996").

To the extent there is an argument that policy concerns similar to those in *McFarland* may be implicated, *i.e.,* that the application of the AEDPA to petitioners who have filed a motion for appointment of counsel are under "pressure ... to file their application[s] within the limitation period, even if the state has not yet appointed counsel ... that pressure is due to the working of [the] AEDPA itself." *Calderon,* 128 F.3d at 1287 n. 3.[13] 28 U.S.C. § 2244 is to blame for the one year statute of limitations.[14] The argument, therefore, cannot be confined to defendants who filed motions for the appointment of counsel prior to the AEDPA's effective date, but would be available to all defendants potentially subject to § 2244's limitations provisions since it works the same hardship on all defendants. Thus, because "[t]he AEDPA limitations provisions treat the ap-

plication for a writ, and only that, as commencing a case," the argument collapses into a quarrel with the operation of the AEDPA itself, not merely with the conclusion that only an application for a writ constitutes a "pending" case. *Id.* To accept the argument would require the Court to give the unambiguous language of § 2244 a contrary meaning, which is far different from what the Court did in *McFarland.*

Not only is there no good reason *for* departing from the usual understanding of the term "pending" in this case, there also is a strong reason *against* such a departure. To construe the meaning of "pending case" to include a motion for the appointment of counsel would frustrate Congress' "obvious intent to 'halt the unacceptable delay which has developed in the federal habeas process.'" *Calderon,* 127 F.3d at 785 (citation omitted). One does not need to look far or deep to discern a legislative intent to reduce delay in the progress of habeas proceedings, for it appears on the face of the statute itself. Congress included within the AEDPA's provisions a one-year statute of limitations period for the filing of a habeas corpus petition. *See* 28 U.S.C. § 2244(d)(1). To the extent there is any doubt, moreover, it quickly is dispelled by examining the voluminous comments of the legislators who voted in favor of the AEDPA. *See, e.g.,* 142 Cong.Rec. H3305 (daily ed. April 15, 1996) (Conference Report on S. 735) ("This title incorporates reforms to curb the abuse of the statutory writ of habeas corpus, and to address the acute problems of unnecessary delay and abuse in capital cases."); 142 Cong.Rec. S3472 (daily ed. Apr. 17, 1996) (statement of Sen. Specter)

---

**13.** This argument is not, of course, available to petitioner here, since he already has filed a petition.

**14.** Section 101 of the AEDPA added the following provisions to 28 U.S.C. § 2244:

(d)(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of the State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking review;

(B) the date on which the impediment to filing an application created by State action in

violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

In addition, the "AEDPA's one-year time limit did not begin to run against any state prisoner prior to the statute's date of enactment." *Calderon,* 128 F.3d at 1287.

(noting that purpose of AEDPA is to put a stop to delay in progress of habeas cases by adding statute of limitations); 141 Cong.Rec. S7805 (daily ed. June 7, 1995) (statement of Sen. Hatch) (same). A more restrained reading of § 107 and *Lindh*, on the other hand, would completely avoid this negative result.

Such a reading would exclude a whole class of cases from the AEDPA's statute of limitations. *See* 127 F.3d 782, 785. Under the reading of § 107 and *Lindh* urged by petitioner, so long as the motion to appoint counsel was filed before the AEDPA came into effect, a putative petitioner, unencumbered by § 2244's limitations provisions, could file his or her actual petition two, three, four, or more years after the conclusion of his or her state court proceedings, because the AEDPA's one year statute of limitations would be rendered inapplicable. It is difficult to believe that Congress intended to allow such easy escape from the reach of the AEDPA. Indeed, another Court has come to this same conclusion, observing that "[i]f a mere appointment of counsel in what amounts to a proceeding ancillary to a true habeas corpus application can avoid the one-year statute of limitations, the Act will not have been very effective at all." 127 F.3d at 785. Moreover, it would be somewhat perverse to interpret *Lindh* and *McFarland*, both of which were concerned with *effectuating* legislative intent, in a manner that frustrates legislative intent. It is a matter of common sense that, when faced with a choice between two statutory interpretations, one of which will advance a discernable legislative intent and purpose, and the other of which will frustrate that intent and purpose, the Court should choose the former interpretation over the latter. The choice here, therefore, is fairly simple.

Because the interpretation of "pending case" advocated by petitioner is contrary to the usual and ordinary meaning of the term as revealed by the context in which it appears, is not compelled by the dictates of equity and fundamental fairness, and runs against the legislative intent and purpose behind the AEDPA's enactment, the Court concludes that only an actual application for a writ of habeas corpus gives rise to a "pending" case *within the meaning* of *Lindh* and § 107. Because Petitioner had not filed an application for a writ at the time of the AEDPA's enactment, his case was not "pending" at that time, and, thus, the AEDPA applies to this action.[15]

For the reasons set forth above, Lott's motion to reconsider (Docket No. 51.) is **DENIED.** Accordingly, this case will be governed by post-AEDPA jurisprudence.

**IT IS SO ORDERED.**

---

**15.** Petitioner also argues that, because this Court construed his motion for the appointment of counsel as a "pending case" in its June 19, 1997 Order, it is bound by that earlier construction. At the time of its decision, however, the issue of when the case should be considered pending had not been raised; neither party framed the issue in such terms, and the Court, thus, was not faced with the need to consider the possible consequences of choosing one definition over the other. Consequently, the Court did not make a *finding* regarding when petitioner's case was first "pending" and is not bound by its earlier language choices.