JOURNAL ENTRY AND OPINION
{¶ 1} Appellant appeals the trial court denying his second petition for postconviction relief. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} In 1986, appellant was convicted of aggravated murder, aggravated robbery, petty theft, aggravated arson, and two counts of aggravated burglary. In 1987, a three-judge panel sentenced appellant to death as a result of his conviction for the aggravated murder of John McGrath.[1] On direct appeal to this court, all of appellant's convictions and sentences were affirmed in State v. Lott (Mar. 16, 1989), Cuyahoga App. No. 54537. The Ohio Supreme Court also affirmed appellant's convictions in State v. Lott (1990), 51 Ohio St.3d 160.[2]
 {¶ 3} In September 1991, appellant filed his first petition for postconviction relief, which was denied by the trial court. On appeal, this court affirmed the trial court's decision. State v. Lott, Cuyahoga App. Nos. 66388, 66389, 66390, 1994 Ohio 4965 ("First Petition").[3]
Pursuant to R.C. 2953.23(A), appellant filed a second and successive petition for postconviction relief in March 2000. The trial court denied the second petition and that denial is now the subject of this appeal.
 {¶ 4} The nature of the crimes for which appellant was convicted is described in State v. Lott (1990), 51 Ohio St.3d 160, 168:
{¶ 5} In this case, the prosecution proved beyond dispute the existence of certain highly probative circumstantial evidence. Lott was indisputably linked to the victim's home by Lott's unexplained possession of the victim's car, by Lott's fingerprints at two separate locations in McGrath's home, and by a shoeprint on the floor of the victim's house consistent with Lott's gym shoes. From these facts and from other physical evidence of the scene established by the prosecution, there was sufficient probative evidence from which reasonable minds could conclude, as the trial panel did, that Lott robbed, set fire to and purposely killed McGrath, and burglarized his home. Lott's purposeful intention to cause death can be inferred from the act of pouring lamp oil over McGrath and setting him on fire.
 {¶ 6} The Ohio Supreme Court finally concluded that "Lott stands convicted on constitutionally adequate evidence." Lott.
 {¶ 7} Appellant presents two assignments of error, which are procedurally interrelated, and will, therefore, be addressed together.
{¶ 8} ASSIGNMENT OF ERROR NO. 1:
{¶ 9} GREG LOTT WAS DEPRIVED OF A FAIR TRIAL AND DUE PROCESS OF LAW BECAUSE ASSISTANT PROSECUTOR MARINO INTENTIONALLY SUPPRESSED COMPELLING EVIDENCE OF GREG LOTT'S ACTUAL INNOCENCE, AND IT IS UNCONSTITUTIONAL TO EXECUTE A PERSON WHO IS INNOCENT OF THE CRIME FOR WHICH HE WAS CONVICTED.
{¶ 10} ASSIGNMENT OF ERROR NO. 2:
{¶ 11} WHEN POST-CONVICTION COUNSEL FOR A CONDEMNED INMATE OBTAINS EVIDENCE OF HIS CLIENT'S ACTUAL INNOCENCE AND DOES NOT PRESENT IT TO A COURT IN A TIMELY FASHION, THE CLIENT IS "UNAVOIDABLY PREVENTED FROM THE DISCOVERY" OF THOSE FACTS AND MAY PRESENT HIS CLAIM OF ACTUAL INNOCENCE PURSUANT TO OHIO REV. CODE. ANN. 2953.21 AND 2953.23.
 {¶ 12} The parties agree that this appeal falls under the authority of R.C. 2953.23, Ohio's successive postconviction relief statute. Because a postconviction relief proceeding is a collateral civil attack on a judgment, the judgment of the trial court is reviewed under an abuse of discretion standard. Abuse of discretion means more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. State v. Hall, Lorain App. No. 95CA006065, 1996 Ohio 947 citing Cedar Bay Constr. Inc., v. Fremont (1990),50 Ohio St.3d 19, 22, 552 N.E.2d 202.
 {¶ 13} Under the statute, appellant argues that, both before and during trial, the state failed to disclose evidence proving his innocence. He also claims that, even though his attorney had obtained this same evidence in 1991, he failed to present it in his first postconviction proceeding. Because his attorney never presented the evidence, appellant believes he received ineffective assistance of counsel in his First Petition.
{¶ 14} I. Appellant's claims under Brady v. Maryland, 373 U.S. 83, 10 L.Ed.2d 215, 83 S.Ct. 1194 (1963).
 {¶ 15} According to appellant, during the trial, the state hid detailed descriptions of the real killer that Mr. McGrath provided to the police; he hid crime stopper reports that corroborated Mr. McGrath's description of his attacker; and Marino hid the fact that an oil burning lamp was discovered in Mr. McGrath's home. Appellant claims the state violated his constitutional right to a fair trial and due process of law because it withheld evidence which he claims was exculpatory.
 {¶ 16} Appellant bases his argument on the law pronounced in Bradyv. Maryland, 373 U.S. 83, 10 L.Ed.2d 215, 83 S.Ct. 1194 (1963). InBrady, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."373 U.S. at 87. Such evidence is material "if there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v.Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). A reasonable probability is that which is sufficient to affect or undermine confidence in the outcome of a trial. Bagley, supra.
{¶ 17} Thus, there are three essential components of a Brady violation: (1) evidence at issue must be favorable to the accused because it is exculpatory or impeaching; (2) evidence must have been willfully or inadvertently suppressed by the State; and (3) prejudice ensued.
{¶ 18} Brady, supra.
 {¶ 19} Moreover, the United States Supreme Court has held that the prosecution's "omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial." United States v. Agurs, 427 U.S. 97, 112-13, 49 L.Ed.2d 342,96 S.Ct. 2392 (1975).
 {¶ 20} Though the prosecution is responsible for disclosing all favorable evidence known to it as well as to those acting on its behalf, there is "no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case." Moore v. Illinois, 408 U.S. 786, 795,33 L.Ed.2d 706, 92 S.Ct. 2562 (1972) (Determining that the witness withheld by the prosecution was merely an early lead that the police abandoned when eyewitnesses were found). United States v. Mullins, (6th Cir. 1994), 22 F.3d 1365, 1372; See also Arizona v. Youngblood,488 U.S. at 55.
 {¶ 21} The prosecution has a duty, however, to disclose evidence favorable to the accused and necessary for him to receive a fair trial. See Bagley, supra 473 U.S. at 675; Brady, supra 373 U.S. at 87. If the prosecution fails to disclose Brady material, the defendant is required to show that there is a reasonable probability that the omission deprived him of a fair trial. See Agurs, 427 U.S. at 108.
 {¶ 22} In the case at bar, appellant argues that the victim's physical description of his attacker, from which a police sketch was made and crime stopper reports gathered by the police after the sketch was televised, were exculpatory. Apparently, after seeing the sketch, people called tips into the police.[4] Appellant argues that because the physical descriptions given in some of the reports were consistent with McGrath's description to police, they corroborate that description and thus tend to prove he was not the assailant. We underscore the fact that the reports are not reports by eyewitnesses to the crime. Also, appellant does not specify exactly which reports he believes would exonerate him as the perpetrator of the crimes for which he was charged and convicted. At best, any police investigation resulting from the crime stopper reports or follow-up on the physical description given by Mr. McGrath constitutes general investigatory work which is not the type of exculpatory evidence the state has to turn over to the defense. See Moore, 408 U.S. at 795. The prosecution has a duty to disclose only evidence that is favorable to a defendant. See Brady, 373 U.S. at 87. In the case at bar, appellant presents no evidence that the crime stopper reports were exculpatory.
 {¶ 23} Nor is the victim's statement to the police exculpatory. McGrath described his assailant as six feet tall, that is, two inches taller than appellant. McGrath also identified his attacker as light complected with long hair, whereas appellant has a medium complexion and, at the time of his arrest, had short hair. We note, however, that a two-inch difference in height is not significant. Nor do we find the difference in complexion tones exculpatory in light of one witness' testimony that appellant was found with liquid make-up upon arrest and the witness believed he used the make-up to lighten his skin tone. Finally, appellant could have had his hair cut after the attack on Mr. McGrath.
 {¶ 24} Appellant's attorney, moreover, chose to keep the jury from hearing the victim's description of his attacker. Given the minimal differences between the victim's physical description of his assailant and appellant's physical traits, we do not conclude that the information would have necessarily been favorable to appellant.[5] We agree with the assessment of the Federal District Court that found
{¶ 25} that the description is not so contrary to Lott's actual appearance that it would have made a material difference in the outcome of Lott's trial, given the other strong circumstantial evidence of guilt.
 {¶ 26} Appellant also claims the state withheld the fact that Mr. McGrath owned the oil-burning lamp found at the murder scene. It was this oil lamp that was used to set the victim on fire. Appellant postulates that had the state divulged before or during trial evidence of this ownership, he would not have been convicted, because the jury would have known he did not bring the incendiary device onto the premises. We disagree. In light of the entire record of evidence presented at trial, we cannot conclude that the victim's ownership of the oil lamp is material to the jury's evaluation of appellant's intent to kill his victim. Appellant was not charged with prior calculation and design. What is material is the fact that oil from the lamp was poured on the victim in order to set him on fire. This court fails to see how the crime for which appellant was convicted has anything to do with who owned the lamp containing the oil used to ignite the victim. It was an ugly act, no matter whether he brought the lamp with him or merely made use of a lamp already there.
 {¶ 27} Given the speculative nature of appellant's claims, this court cannot say that there is a reasonable probability that the result of the trial would have been different had the prosecution produced the victim's description of his assailant to police, the crime stopper reports, or evidence that the victim owned an oil-burning lamp. What must be considered in this balancing is that a witness observed defendant sitting in McGrath's car the day before McGrath was found. This witness described his clothing and that description matched clothing found in defendant's car. In addition, defendant's fingerprints were found in McGrath's home, and a shoeprint in McGrath's bedroom "generally matched the pattern found in defendant's tennis shoe." Thus, there is independent evidence connecting him to the crime. We conclude, therefore, appellant has not established a Brady violation and is not entitled to relief. Appellant's Brady claims are not well-taken.
{¶ 28} II. R.C. 2953.23(A).
 {¶ 29} For postconviction relief, a petition must satisfy the following conditions:
{¶ 30} a court may not entertain * * * a second petition or successive petitions * * * unless
{¶ 31} (1) [e]ither of the following applies:
{¶ 32} (a) The petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief.
{¶ 33} (b) Subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right. added).
{¶ 34} (2) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence. (Emphasis added).
 {¶ 35} In the case at bar, appellant does not satisfy any part of R.C. 2953.23(A)(1) or (2). The record discloses that appellant received a copy of the police report he says contains Mr. McGrath's physical description. Appellant received the report on October 4, 1991, almost immediately after he had filed his First Petition. The record also discloses that the court did not render its decision on the First Petition until September 28, 1993.
 {¶ 36} Appellant never sought to amend his petition or otherwise present the report or its contents during the pendency of the First Petition. Thus, contrary to what the statute requires of him in his second request for postconviction relief, appellant has not established that he was "unavoidably prevented" from discovering the statement he actually had in his possession during the pendency of the appeal of his First Petition.
 {¶ 37} We also reject appellant's argument that he was unavoidably prevented from obtaining the crime stopper reports gathered by the police. Appellant does not explain how he was unavoidably prevented from obtaining copies of the reports or even when he learned they existed. Without more detail, we must conclude that neither the victim's description to police nor the crime stopper reports fall under R.C.2953.23(A)(1).
 {¶ 38} Appellant's claims also fail under R.C. 2953.23(A)(2). None of the evidence appellant claims should have been turned over by the state prior to and/or during trial, is sufficient for this court to conclude that a reasonable factfinder would have decided differently about appellant's conviction or eligibility for the death sentence. Above, we discussed the failure to show prejudicial effect on the conviction. As noted by the Ohio Supreme Court in State v. Lott, at 168, "Lott stands convicted on constitutionally adequate evidence."
 {¶ 39} None of the evidence appellant discusses is either clear or convincing enough, within the context of all of the evidence presented at trial, to conclude, moreover, that the death sentence was improper. Given the heinous nature of the crime for which Lott was convicted and the amount of evidence upon which that conviction stands, we cannot conclude that the trial court abused its discretion in imposing a death sentence. Accordingly, appellant's claims fail under R.C. 2953.23(A)(2).
{¶ 40} III. Res Judicata
 {¶ 41} We further conclude that each of appellant's claims are barred under the doctrine of res judicata. The doctrine applies to successive petitions for post-conviction relief. National Amusements,Inc. v. Springdale (1990), 53 Ohio St.3d 60, 62, 558 N.E.2d 1178; Statev. Apanovitch (1995), 107 Ohio App.3d 82, 87, 667 N.E.2d 1041; McCann v.Lakewood (1994), 95 Ohio App.3d 226, 237, 642 N.E.2d 48.
 {¶ 42} Typically, the doctrine bars claims that could or should have been brought at trial or on direct appeal. However, res judicata also applies to foreclose a defendant from presenting claims that could or should have been brought in a first petition for postconviction relief. As we determined in Apanovitch, supra:
{¶ 43} R.C. 2953.23(A) permits, but does not require, the court to entertain a second or successive petition for similar relief based upon the same facts or on newly discovered evidence Since a postconviction proceeding is a collateral attack on a civil judgment, the trial court has the same discretion to deny relief as in any other civil post-judgment motion. See State v. Steffen (1994), 70 Ohio St.3d 399, 410, 639 N.E.2d 67. Principles of res judicata bar the assertion of any claim that was or could have been raised at trial or on direct appeal. Id., citing State v. Duling (1970), 21 Ohio St.2d 13, 254 N.E.2d 670; State v. Perry
(1967), 10 Ohio St.2d 175, 226 N.E.2d 104, paragraph nine of the syllabus. To invoke discretionary relief, Apanovitch must show "`some objective factor external to the defense impeded counsel's efforts' to raise the claim in his prior petition." Id., citing McCleskey v. Zant (1991), 499 U.S. 467, 493, 113 L.Ed.2d 517, 111 S.Ct. 1454. Additionally, Apanovitch must show actual prejudice flowing therefrom. Id.
 {¶ 44} In the case at bar, every one of appellant's claims was either previously raised or could have been raised in the First Petition[6] or in his appeal for a writ of habeas corpus in the matter entitledLott v. Coyle (6th Cir. 2001), 261 F.3d 594.
 {¶ 45} In Lott v. Coyle, 261 F.3d 594, supra, appellant sought a writ of habeas corpus in the federal court. In the petition, the court was asked to and did evaluate the same claims appellant presents here, namely, that the state withheld exculpatory evidence concerning: (1) the victim's descriptions of his attacker, descriptions put into written form by police; (2) crime stopper reports collected by police after McGrath's description was released to the public; and (3) the fact that McGrath owned an oil burning lamp. The court stated:
{¶ 46} Lott argues that Respondent suppressed evidence from him concerning McGrath's description of his attacker, which Lott suggests differed significantly from his physical appearance ("description-by-victim claim"). Specifically, McGrath described his attacker to police, in a statement that was not introduced at trial, as a six-foot-tall, medium-build, very light-complexioned African-American man with long straight hair, who, at the time of the assault, was wearing a light-colored shirt, white-gray tennis shoes, and a cap without a bill. Lott is a medium-to-dark-complexioned African-American man, who is five feet, ten inches tall, 176 pounds, with short hair; at the time of Lott's arrest, police found light-colored tennis shoes in the trunk of his car. Lott also alleges, in what we will refer to as his "other-suspects claim," that Respondent withheld from Lott: (1) other physical descriptions of McGrath's assailant that were consistent with McGrath's description; (2) evidence that a light-complexioned man informed police officers that he was wanted for questioning in connection with McGrath's death and several burglaries; (3) evidence that one of eyewitness Deidra Coleman's neighbors described the perpetrator as having a heavy build with a pot belly; and (4) evidence that McGrath told police in 1983 that he could identify the man who burglarized his home in 1983.
{¶ 47} Lott failed to raise the description-by-victim claim at all in the state courts, and failed to raise the other-suspects claim either in the state courts or in his federal habeas petition, and thus, absent a showing of cause and prejudice for the defaults, is precluded from raising them now.
{¶ 48} * * *
{¶ 49} Lott maintains that Respondent withheld evidence concerning McGrath's ownership of an oil-burning lamp, which, if presented at trial, would have called into doubt the Government's theory that McGrath did not own a lamp (and thus had no reason to own heating oil) and that Lott brought a bottle of heating oil into McGrath's house with the express purpose of using it to set McGrath on fire. Lott also argues that Respondent withheld information concerning a frayed telephone cord found near the location of McGrath's body, which McGrath's assailant allegedly used to bind and restrain him. The introduction of this evidence at trial, Lott argues, "so infused the trial with unfairness as to deny [him] due process of law." Because the Cuyahoga County Court of Appeals and the Ohio Supreme Court rejected this claim on the merits, he contends that it cannot be procedurally defaulted. Although Lott challenged on direct appeal the trial court's admission of this evidence on the basis that the State failed to establish its relevance, it appears that Lott never raised in state court the specific objection he raises today, and thus we are foreclosed from reviewing it.
{¶ 50} Lott, supra at 618-619.
 {¶ 51} Because all the claims presented here are exactly the same ones appellant advanced either in the First Petition or in his appeal on the writ of habeas corpus in Lott v. Coyle, supra, the trial court did not err, because appellant's claims are barred by res judicata. The trial court correctly determined, in relevant part, that
{¶ 52} [t]he doctrine of res judicata bars petitioner from raising and litigating his allegations that the State of Ohio failed to reveal exculpatory evidence. State v. Lott (April 15, 1994), Cuyahoga App. No. 54537.
 {¶ 53} In the case at bar, appellant does not offer any new evidence in support of his successive petition for postconviction relief. The record before us is bereft of any new supporting evidence distinguishing it from the claims brought in the First Petition or on appeal in Lott v. Coyle, supra. Because the state of the record is unchanged we reject appellant's attempt to analogize his situation in this second petition with the circumstances in Kyles v. Whitley (1995),131 L.Ed.2d 490, 115 S.Ct. 1555, in which the Supreme Court of the United States held that the existence of newly obtained criminal evidence required defendant's conviction to be reversed.
 {¶ 54} Appellant's next argument is related to his belief that evidence proving his innocence was withheld by his own attorney. Unlike the situation with the prosecution's failure to disclose exculpatory evidence, he argues that his own counsel, who had supposedly located the same evidence "two weeks" before his first petition for postconviction was filed, nonetheless, failed to present any of that evidence in the First Petition. As a result, appellant argues, he did not receive effective assistance of counsel during those proceedings. We reject this argument.
 {¶ 55} Appellant is claiming that he was denied his constitutional right to effective assistance of postconviction counsel in the first post conviction petition because his attorney did not present the evidence he had located. On its face, we reject this claim because there is no constitutional right to counsel, effective or otherwise, in state postconviction proceedings. Coleman v. Thompson (1997), 501 U.S. 722,752, 111 S.Ct. 2546, 115 L.Ed.2d 640 citing Pennsylvania v. Finley,481 U.S. 551, 95 L.Ed.2d 539, 107 S.Ct. 1990 (1987); Murray v.Giarratano, 492 U.S. 1, 106 L.Ed.2d 1, 109 S.Ct. 2765 (1989) (applying the rule to capital cases); State v. Crowder (1991), 60 Ohio St.3d 151,573 N.E.2d 652. Consequently, a petitioner cannot claim a constitutional violation because of ineffective assistance of counsel in such proceedings. Coleman, supra. citing Wainwright v. Torna, 455 U.S. 586,71 L.Ed.2d 475, 102 S.Ct. 1300 (1982) (where there is no constitutional right to counsel there can be no deprivation of effective assistance).
 {¶ 56} In Ohio, we note that part of 2953.21(I)(1) allows for the appointment of counsel in a first postconviction proceeding "[i]f a person has received the death penalty." Section (I)(2), however, abridges the right to postconviction counsel by expressly disallowing a subsequent claim of ineffective assistance of counsel during the initial postconviction proceeding. R.C. 2953.23(I)(2) states, in part:
{¶ 57} The ineffectiveness or incompetence of counsel during proceedings under this section does not constitute grounds for relief in a proceeding under this section, in an appeal of any action under this section, or in an application to reopen a direct appeal.
{¶ 58} Even though the statute permits a petitioner sentenced to death to have appointed counsel in an initial petition for postconviction relief, that "right" to counsel, however, is not a state or federally protected constitutional right. Coleman, supra.
 {¶ 59} Finally, appellant asserts that Ohio's successive postconviction statute, R.C. 2953.23(A) is unconstitutional because it requires him to "show that he was unavoidably prevented from discovering the facts the petition is predicated upon and * * * that a reasonable factfinder would not have found him guilty or eligible for the death penalty." We reject appellant's claim because
{¶ 60} [a] postconviction relief proceeding is a collateral civil attack on a judgment and is not imbued with the same federal constitutional protections as are all of the criminal proceedings which precede it.
{¶ 61} State v. Davie, Trumbull App. No. 2000-T-0104, 2001 Ohio 5842 citing Pennsylvania v. Finley (1987), 481 U.S. 551, 95 L.Ed.2d 539,107 S.Ct. 1990. Moreover, not only does the statute pass constitutional muster,[7] it correctly requires appellant to produce some affirmative evidence that, because he was unavoidably prevented from discovering facts, a constitutional error was committed either at trial or on appeal. Appellant has failed to produce the requisite evidence.
 {¶ 62} For all the foregoing reasons, we overrule each of appellant's assignments of error. The judgment of the trial court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., P.J., CONCURS. TERRENCE O'DONNELL, J., CONCURSIN JUDGMENT ONLY.
[1] Appellant's additional sentences and fines as a result of his other convictions are not pertinent to this appeal.
[2] Appellant's petition for writ of certiorari was denied by the United States Supreme Court in Lott v. Ohio (1990), 111 S.Ct. 591.
[3] Additional filings by appellant include an application for delayed reconsideration, denied by this court in State v. Lott (Apr. 15, 1994), Cuyahoga App. No. 54537. Cert denied by the Ohio Supreme Court in Statev. Lott (1995), 71 Ohio St.3d 1491. Appellant also filed a petition for writ of habeas corpus in federal court, which was denied in Lott v.Coyle (N.D.Ohio. 1998), 2 F. Supp.2d 961. The Sixth Circuit affirmed inLott v. Coyle, (6th Cir. 2001), 261 F.3d 594.
[4] We note that appellant's brief does not reference exactly which call-in entries he believes are exculpatory. Appellee, however, does recite actual details from some of the specific pages comprising the reports. Most of the reports show calls by persons who had seen the televised sketch and who then identified a particular individual whom the caller believed to be a possible suspect. As noted by appellee, an example of a typical crime stopper call-in entry is, caller said a person named Payne makes a living robbing people. Appellee brief at p. 23.
[5] McGrath was found on July 15, and appellant was arrested on July 30 — ample time for his hair to be cut.
[6] In State v. Lott (Nov. 3, 1994), Cuyahoga App. Nos. 66388, 66389, 66390, at pages *22-36, appellant presented and this court considered a variety of claims, including: (1) that the state did not disclose exculpatory evidence such as the absence of appellant's fingerprints inside McGrath's car which appellant had been seen driving just before McGrath was found; and (2) ineffective assistance of both trial and appellate counsel. Moreover, the Ohio Supreme Court previously concluded that evidence of the lack of fingerprints was not "favorable to the defense" because the lack of fingerprints neither proves or disproves anything material. The federal district court further explained:
 While a court could conclude that the lack of fingerprints might serve to weaken the force of Coleman's identification of Lott as the individual driving McGrath's car, the standard under the [Antiterrorism and Effective Death Penalty Act] is not whether the district court would come to the same conclusion, but whether the conclusion is debatable among reasonable jurists.
[7] Davie, supra, found the statute constitutional.