*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0274P (6th Cir.)
File Name: 01a0274p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

GREGORY LOTT,
  *Petitioner-Appellant,*

   *v.*

RALPH COYLE, Warden,
  *Respondent-Appellee.*

No. 99-4155

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 95-02642—Kathleen McDonald O'Malley,
District Judge.

Argued: February 1, 2001

Decided and Filed: August 17, 2001

Before: MERRITT, BOGGS, and COLE, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** J. Joseph Bodine, Jr., PUBLIC DEFENDER'S OFFICE, OHIO PUBLIC DEFENDER COMMISSION, Columbus, Ohio, for Appellant. Michael L. Collyer, OFFICE OF THE ATTORNEY GENERAL OF OHIO, Cleveland, Ohio, for Appellee. **ON BRIEF:** J. Joseph Bodine, Jr., David H. Bodiker, Lori Leon, PUBLIC DEFENDER'S OFFICE, OHIO PUBLIC DEFENDER COMMISSION,

1

Columbus, Ohio, for Appellant.  Michael L. Collyer, Jon W. Oebker, OFFICE OF THE ATTORNEY GENERAL OF OHIO, Cleveland, Ohio, for Appellee.

COLE, J., delivered the opinion of the court, in which MERRITT, J., joined.  BOGGS, J. (pp. 46-49), delivered a separate opinion concurring in part and concurring in the judgment.

———————————

**OPINION**

———————————

R. GUY COLE, JR., Circuit Judge.  Petitioner-Appellant Gregory Lott ("Lott") appeals from the district court's denial of his petition for a writ of habeas corpus, setting forth four bases for relief: (1) Lott's case is prematurely before this Court inasmuch as the district court erroneously denied his request to conduct discovery and to hold an evidentiary hearing; (2) the three-judge panel that convicted him lacked jurisdiction; (3) Lott never executed a valid knowing, intelligent, and voluntary waiver of his constitutional right to trial by jury; and (4) the State of Ohio suppressed exculpatory evidence.  The State of Ohio, through Respondent-Appellee Warden Ralph Coyle ("Respondent"), argues that Lott is procedurally barred from raising these claims before this Court, because he failed to raise them on direct appeal in state court.  For the reasons set forth herein, we **AFFIRM** the order of the district court in its entirety.

**I. BACKGROUND**

The East Cleveland, Ohio, home of John McGrath ("McGrath"), a 79-year-old African-American man, was burglarized on three separate occasions in August 1983.  On August 24, 1983, after the third break-in, East Cleveland police detectives, in consultation with McGrath, devised a plan to apprehend the person or persons that had burglarized his home.  They placed a clean drinking glass upside down over a quarter on McGrath's dining room table, anticipating

that the burglar would lift the glass to remove the quarter, and in the process, leave his or her fingerprints. A fourth burglary occurred on September 7, 1983, after which McGrath again notified police. As predicted by the detectives, the burglar had moved the drinking glass and taken the quarter. The police analyzed the fingerprints obtained from the glass, but were unable to identify them at that time.

Three years later, on Saturday, July 12, 1986, McGrath drove his 1982 Ford Escort to a bank, where he cashed a $21 check. Patricia Hill, the head bank teller, stated that McGrath appeared to be in high spirits and in good health. On Monday morning, July 14, Deidra Coleman noticed McGrath's Ford Escort parked in her Cleveland, Ohio, neighborhood. Behind the wheel of the car was a young, African-American male, who remained in the car for almost two hours. Her suspicions aroused, Coleman walked by the car, looked at the driver, noted the license plate number, and twice called the police from a pay phone a block away. She provided police with a description of the vehicle and its license plate number. The car left at approximately 11:20 a.m. and returned thirty minutes later, at which time Coleman observed the driver walk to the yard of her elderly neighbors, where Esther Turk was home alone. Again, Coleman notified the police. Shortly thereafter, she spotted the young man running from the Turks' home, while carrying a brown bag beneath his arm. Coleman and Turk's husband then entered the home and discovered a bruised Esther Turk shaking with her blouse undone. She had been assaulted and robbed.

Coleman, a trained artist, sketched for the police the driver she had seen in the Ford Escort parked outside the Turks' house. She subsequently identified Lott from a photo array as the driver of the vehicle. Coleman again provided City of Cleveland police detectives with the vehicle's license plate number, and they, in turn, used that information to identify McGrath as the owner. The detectives traveled to McGrath's house and sought to speak with him about his car. Upon seeking entry into the home, they were unable to elicit a response from anyone in the house. The following day, the

detectives asked East Cleveland police officers to check on the welfare of McGrath. When uniformed East Cleveland police officers were also unable to rouse McGrath, they entered the house through an unsecured kitchen door, whereupon they discovered a bloody, semi-conscious, and severely burned McGrath lying on the bedroom floor of his home. Apparently, during the course of a burglary of McGrath's home, an unknown assailant had doused McGrath with heating lamp oil and set him on fire. McGrath suffered second-degree burns over twelve- to eighteen-percent of his body. The burns extended over his right back and side, lower and upper left side, both arms, and both knees. McGrath also suffered abrasions on his wrist, knee, and ankle, and a bruised left eye, which had apparently been caused by a blunt trauma.

At the time that police officers discovered McGrath, he was wearing a shirt that covered his burns, although the shirt itself was not scorched. Dried fluids (apparently from McGrath's burning flesh) were present on the shirt and a strong odor emanated from McGrath's burns. Police also found, within a foot of McGrath's body, a frayed telephone cord, which police believe was used to bind McGrath's wrists and ankles. On an adjacent cabinet, police discovered an uncapped one-quart bottle of flammable heating lamp oil. One-third of the oil remained in the bottle. Other evidence of a fire included charred draperies and a sheet.

When police officers interviewed McGrath, he informed them that he recognized his attacker. McGrath described him as a six-foot-tall, medium-build, very light-complexioned African-American man with long, straight hair, who, at the time of the attack, was wearing a light-colored shirt, white-gray tennis shoes, and a cap without a bill. One week after McGrath provided police detectives with this description, he was interviewed again at the hospital, at which time he told them that he believed that he and his assailant were patrons of the same barber shop. Police detectives showed McGrath a composite sketch drawn by Coleman of the man seen driving his car. McGrath examined the sketch, but was unable to identify the sketched individual as his attacker. Both

only does the alleged error of state law Lott raises "ha[ve] nothing whatsoever to do with the fairness of the trial itself," it has nothing to do with the fairness of anything. It relates only to an internal regulation of Ohio's courts.

Additionally, determining whether the alleged state-law error so deprived Lott of federal substantive due process does not "necessarily require[] our consideration of the merits of his claim." Even if he were correct and his state-law claim meritorious, any such error could not possibly have resulted in the denial of a fundamentally fair proceeding. This court need not address the merits of Lott's state-law claim because any such error did not result in the denial of a federal right.

Finally, I do not join the majority's analysis of Lott's miscarriage-of-justice/actual innocence claim, in Part III.D.2.b. The majority needlessly analyzes a point "the parties have not argued," by discussing certain evidence that it is not even sure may be properly considered in evaluating an actual innocence claim. The majority reserves judgment on the matter in part because "it may now be pending in state court." Such a discourse has little or no value. To the extent that it is an opinion at all, it may be an advisory opinion beyond the limits of our Article III jurisdiction to decide cases or controversies. *See Williams v. Zbaraz*, 448 U.S. 358, 367 (1980) (district court lacked jurisdiction to consider the constitutionality of a statute when none of the parties challenged its validity).

I concur in the court's judgment and, excepting these two points, in its opinion.

to trial by jury was knowing, intelligent, and voluntary, and therefore effective under the federal constitution. I do not consider it "a close question whether a court's failure to comply with each of § 2945.05's requirements is sufficient to invalidate an otherwise effective waiver . . . ." A state court's entirely internal mistakes cannot vitiate a constitutionally valid waiver, for those after-the-fact processes have no relation at all to the defendant's knowledge of his rights, his information regarding the implications of waiving them, or whether any improper forces made his decision to waive involuntary.

To say that a state law error may provide a basis for habeas relief when the error also violates federal constitutional rights states the obvious, but does not apply here. As *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), attempted to make clear, "'federal habeas corpus relief does not lie for errors of state law.'" *Ibid.* (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). The proper inquiry is whether federal constitutional rights were violated. We can, of course, look to compliance with prophylactic state procedures designed to safeguard parallel state rights (Ohio's statute and jurisprudence nowhere mention the federal right to trial by jury), to inform our resolution of the federal question. While Lott's state-law jurisdictional argument could be said to "implicate" a federal question, the record evidence conclusively demonstrates that his federal rights were not violated. Indeed, Lott has advanced no meaningful argument that his waiver was not knowing, intelligent, and voluntary.

The majority's citation to *Norris v. Schotten*, 146 F.3d 314, 329 (6th Cir. 1998), and its discussion of substantive due process further confuse the issue before us. *Norris* explained that a state-law error in pre-trial proceedings can deny federal substantive due process when the error renders the defendant's trial fundamentally unfair. *See ibid.* (rejecting such a claim with respect to alleged denial of state statutory right to speedy trial because it "ha[d] nothing whatsoever to do with the fairness of the trial itself but rather [went] to the fairness of the petitioner's extended pretrial detention"). Not

interviews of McGrath were memorialized in police reports. On July 23, 1986, McGrath died of acute bilateral bronchopneumonia stemming from his injuries.

City of Cleveland police officers arrested Lott in Cleveland for McGrath's murder on July 30, 1986. An investigation conducted by City of Cleveland police officers determined that an intruder had forcibly entered McGrath's home by removing a rear basement window from its frame and prying loose a panel on the door leading from the basement to the kitchen. The house had obviously been ransacked. Kitchen and bedroom drawers had been opened and emptied. The mattress to McGrath's bed had also been disturbed. The officers lifted a set of fingerprints from a church contribution envelope in McGrath's home and a fingerprint from a dresser in the bedroom. Officers identified the fingerprints as Lott's and also determined that Lott's fingerprints matched those found on the glass that the officers had placed on McGrath's dining room table three years earlier. In McGrath's bedroom, the officers discovered a dusty shoeprint, which generally matched the pattern found on a pair of light-colored tennis shoes recovered by officers from the trunk of Lott's car on the date of his arrest. A few days after the discovery of McGrath, police officers located McGrath's car, which they believe Lott stole and drove for more than 28 hours prior to his apprehension.

## II. PROCEDURAL HISTORY

### A. Indictments and Trial

On August 8, 1986, a Cuyahoga County grand jury issued a nine-count indictment in Case No. CR 211002, charging Lott with, *inter alia*, felony murder, aggravated burglary, aggravated robbery, kidnapping, and aggravated arson, all of which were committed in 1986.[1] The Government attached

---

[1] Lott was indicted for other crimes against other victims, but, for purposes of this opinion, we have listed only the charged offenses of which McGrath was the victim.

to each count an aggravated felony specification, because Lott had previous convictions for aggravated robbery and aggravated burglary. A grand jury also indicted Lott in Case No. CR 211261 for the 1983 offenses against McGrath, charging him with, *inter alia*, aggravated burglary and petty theft. On October 17, 1986, in Case No. CR 212720, a grand jury re-indicted Lott on the aggravated arson count of Case No. CR 211002, which had been indicted incorrectly. This count also carried an aggravated felony specification. Lott pleaded not guilty to all counts charged in all the indictments.

At a June 23, 1987, pre-trial conference, Lott waived his right to a jury trial both orally and in writing, opting instead to be tried before a three-judge panel, as permitted by Ohio law. The state trial court at this time also joined all offenses of the three indictments involving McGrath. A three-day trial ensued, which concluded on July 17, 1987, with a verdict of guilty as to all counts. The trial court, however, dismissed the kidnapping count pursuant to Lott's Rule 29 motion for judgment of acquittal.

After a two-day mitigation hearing, a three-judge panel unanimously concluded on July 29, 1987, that the aggravating circumstances outweighed the mitigating factors beyond a reasonable doubt and, accordingly, sentenced Lott to death for McGrath's murder. On July 31, 1987, the panel sentenced Lott to, *inter alia*, fifteen- to twenty-five years' imprisonment for the aggravated robbery and aggravated burglary convictions, and six months' imprisonment for the petty theft conviction.

### B. Direct Appeal

Lott's appointed counsel filed a brief on his behalf, alleging a number of trial and sentencing errors. The Court of Appeals of Ohio, Eighth District, Cuyahoga County ("Cuyahoga County Court of Appeals") affirmed Lott's conviction and sentence on March 16, 1989. *See State v. Lott*, No. 54537, 1989 WL 24927 (Ohio Ct. App. Mar. 16, 1989). Lott appealed from this decision to the Ohio Supreme Court, setting forth seventeen assignments of error. The Ohio

habeas corpus will lie only in case the judgment under which the prisoner is detained is shown to be absolutely void for want of jurisdiction in the court that pronounced it, either because such jurisdiction was absent at the beginning, or because it was lost in the course of the proceedings."); *Keizo v. Henry*, 211 U.S. 146, 148 (1908); *Ex parte Siebold*, 100 U.S. 371, 375 (1879).

Lott, of course, claims no such fatal error in his indictments. And he does not claim that the Cuyahoga County Court of Common Pleas entirely lacked jurisdiction to try his case. To the extent his claim may fit into this language, he argues that a three-judge panel of that court lacked jurisdiction to try him due to a clerical oversight, such that a single judge and jury of that same court should have tried him. This is not the sort of complete lack of jurisdiction discussed in *Frank*, *Keizo*, and *Siebold*.

In actuality, Lott claims that he "never executed a valid knowing, intelligent, and voluntary waiver of his constitutional right to be tried by a jury." Yet his argument, based in state law, addresses solely the state-law validity of the waiver, rather than the federal standard that waiver of federal constitutional rights must be knowing, intelligent, and voluntary. It may be true that, under Ohio law, the three-judge panel lacked jurisdiction because Ohio's procedures for protecting his *state-law right* to a jury trial are extraordinarily strict and the clerical oversight resulted in an incomplete waiver. *See* O.R.C. § 2945.05; *State v. Pless*, 658 N.E.2d 766, 770 (Ohio 1996). But this has no bearing on whether his waiver of his right to trial by jury (which would have succeeded under Ohio law if the court clerk had time-stamped it, filed it, and made it part of the record) was effective to waive his federal constitutional right by being knowing, intelligent, and voluntary.

As the transcript of Lott's jury-waiver hearing demonstrates, JA at 754-57, Lott was well aware of the implications of *his request* to be tried before a three-judge panel. The record clearly shows that Lott's waiver of his right

---

## CONCURRENCE

---

BOGGS, Circuit Judge, concurring in part and concurring in the judgment. I concur in the judgment of the court and in most of the analysis in its opinion. I write separately because the majority addresses one issue I believe we need not and offers obiter dictum on an issue Lott has not pressed. I do not join Parts III.B and III.D.2.b of the majority opinion.

The heart of my disagreement with the majority lies in its analysis of whether Lott's jurisdiction argument presents a federal question, which analysis appears in footnote 6. Lott's claim here is based entirely on a state-law problem, as the majority's review of developing Ohio law reveals. Footnote 6 states that Lott's "jurisdiction claim, although predicated on state law, directly implicates the federal question of whether Lott's trial, in the absence of a jury, violated his Sixth Amendment right to a jury trial and his Fourteenth Amendment right to due process."

Although Lott's brief cites *Lowery v. Estelle*, 696 F.2d 333, 337 (5th Cir. 1983), for a similar proposition concerning state-law claims brought before federal habeas courts, the material at that location is actually the petitioner's *argument*, which the court specifically declined to address because the petitioner failed to exhaust his state-law argument in state court, *see id.* at 337-38. Fifth Circuit precedent on which *Lowery* relies, some of which Lott also cites in his brief, states the rule that federal habeas courts may not review an asserted state-law error in an indictment unless "the indictment is so fatally defective as to deprive the convicting court of jurisdiction." *Murphy v. Beto*, 416 F.2d 98, 100 (5th Cir. 1969); *see also Underwood v. Bomar*, 335 F.2d 783, 788 (6th Cir. 1964). This rule appears to be based on old caselaw holding that a complete lack of jurisdiction in the sentencing court may provide grounds for federal habeas relief. *See Frank v. Mangum*, 237 U.S. 309, 327 (1915) (". . . the writ of

---

Supreme Court affirmed his conviction and sentence on June 6, 1990. *See State v. Lott*, 555 N.E.2d 293 (Ohio 1990). On December 10, 1990, the United States Supreme Court denied Lott's petition for a writ of certiorari. *See Lott v. Ohio*, 498 U.S. 1017 (1990).

### C. Post-Conviction

Lott raised fifty-five bases for relief in his state court petition for post-conviction review, filed on September 6, 1991. On the motion of the state prosecutor, the trial court dismissed Lott's petition on September 28, 1993. *See State v. Lott*, Nos. 211002, 211261, 212720 (Cuyahoga Ct. of Common Pleas Sept. 28, 1993) (unreported). In his appeal to the Cuyahoga County Court of Appeals, Lott's merits brief, filed on February 15, 1994, set forth six assignments of error. The Court of Appeals affirmed the trial court's dismissal of his petition on November 3, 1994. *See State v. Lott*, Nos. 66388, 66389, 66390, 1994 WL 615012 (Ohio Ct. App. Nov. 3, 1994). On December 2, 1994, Lott appealed to the Ohio Supreme Court and alleged six assignments of error. The Ohio Supreme Court declined to accept jurisdiction over the case on March 15, 1995. *See State v. Lott*, No. 94-2577 (Ohio Mar. 15, 1995) (unreported).

### D. *Murnahan*

Lott filed an application for delayed reconsideration (also known as a *Murnahan* motion) on June 30, 1993, in the Cuyahoga County Court of Appeals, in which he argued that his appellate counsel had been ineffective in their representation of him during direct appeal for their failure to raise twenty-two additional assignments of error. The Court of Appeals denied Lott's motion on April 15, 1994, *see State v. Lott*, No. 54537 (Cuyahoga Ct. of Common Pleas Apr. 15, 1994) (unreported), and the Ohio Supreme Court affirmed the Court of Appeals's denial on September 7, 1994, *see State v. Lott*, 638 N.E.2d 1039 (Ohio 1994).

### E. Federal Habeas

Lott filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Ohio on February 3, 1997, setting forth twenty-two bases for relief. The district court denied the petition in its entirety on March 31, 1999. On April 14, 1999, Lott filed a motion to alter or amend the judgment, and submitted in support thereof 330 pages of documentation collected during the federal discovery process. The district court denied the motion on August 26, 1999. From these denials Lott now appeals.

### III. DISCUSSION

A federal court may grant a habeas corpus petition only when it concludes that the state adjudication of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, *see* 28 U.S.C. § 2254(d)(2). Before a federal court may review a federal claim raised in a habeas petition, it must first determine whether the petitioner has exhausted the remedies available to him in state court. *See* 28 U.S.C. § 2254(b)(1). If a federal habeas claim has not been presented to a state court for adjudication, then it is unexhausted and may not properly serve as the basis of a federal habeas petition. *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

Where a claim has been presented to a state court, and that claim was rejected on an adequate and independent state ground without an adjudication on the merits, a petitioner may seek federal habeas review of that claim only where he can establish "cause and prejudice" for the default. *See Cone v. Bell*, 243 F.3d 961, 967 (6th Cir. 2001). In evaluating claims of procedural default, a reviewing court is guided by the following four-part inquiry:

although suppressed at trial, was voluntarily made and admits of no reason to doubt its reliability or truthfulness. Though Lott said he did not recall setting the fire that burned McGrath, the State introduced evidence of Lott's fingerprints in the victim's home, his possession of the victim's car, and a shoeprint in McGrath's bedroom that generally matched Lott's shoes. Since this issue may now be pending in state court and has not been fully briefed before us, we reach no final conclusion regarding the effect of the confession.

### IV. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

When asked about any type of flammable [sic] fluid or liquid being put on Mr. McGrath and then setting it on fire he stated that he didn't remember anything about that. He was asked about why he broke into Mr. McGrath's house and why did he tie him up he stated he didn't know why he broke into the house, he didn't want him to contact the police when he left the house with his car . . . .

When questioned about his intent in the McGrath incident he stated he didn't know. He stated he didn't intent [sic] to hurt anyone and that he didn't know what he was doing. He stated that he would do anything to keep from [going] to the [electric] chair.

Because Lott spoke to the interviewing detective without counsel present, defense counsel moved to suppress the statement during trial. At the suppression hearing, the prosecutor only summarized the contents of the statement to avoid biasing the trial panel. The panel then granted the motion to suppress on the authority of *Michigan v. Jackson*, 475 U.S. 625, 636 (1986) ("We thus hold that, if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid.").

Although the panel did not consider Lott's statement in convicting him, a habeas court may take it into account in evaluating his claim of miscarriage of justice due to actual innocence. *See Schlup*, 513 U.S. at 327-28 ("In assessing the adequacy of petitioner's showing, therefore, the district court is not bound by the rules of admissibility that would govern at trial. Instead, the emphasis on 'actual innocence' allows the reviewing tribunal also to consider the probative force of relevant evidence that was either excluded or unavailable at trial."); *see also Gall v. Parker*, 231 F.3d 265, 320 (6th Cir. 2000), *cert. denied,* 121 S. Ct. 2577 (2001).

A more detailed review of the circumstances than appears in this record may show that Lott's inculpatory statement,

First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (internal citations omitted). The fourth prong requires a showing by the petitioner of a substantial reason to excuse the default and actual prejudice suffered as a result of the alleged constitutional error. *See Cone*, 243 F.3d at 967.

The vast majority of Lott's claims in the instant case are procedurally defaulted, and Lott has failed to establish cause and prejudice for default of those claims. He, then, is left to argue that our refusal to evaluate his procedurally defaulted claims would result in a manifest miscarriage of justice because he is actually innocent of the crimes of which he was convicted. *See Schlup v. Delo*, 513 U.S. 298, 314-15 (1995). We are not persuaded that Lott has presented "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial," *id.* at 316, and thus cannot conclude that a manifest miscarriage of justice would result if we declined to review his procedurally defaulted claims. Accordingly, for the reasons set forth both in the district court's thorough and well-reasoned opinion and in our discussion *infra* of Lott's claims, we **AFFIRM** the district court's denial of Lott's petition in its entirety.

## A. Discovery/Evidentiary Hearing

### 1. Standard of Review

We review a district court's limitation on the scope of discovery for an abuse of discretion. *See* 28 U.S.C. § 2254(e)(2); *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993). A district court may, in the context of a habeas proceeding, permit discovery, provided that the habeas petitioner presents specific allegations showing reason to believe that the facts, if fully developed, may lead the district court to believe that federal habeas relief is appropriate. *See* Rule 6(a) of Rules Governing Section 2254 Proceedings for the United States District Courts; *Lynott v. Story*, 929 F.2d 228, 232 (6th Cir. 1991). We review a district court's decision whether to hold an evidentiary hearing for an abuse of discretion. *See Mitchell v. Rees*, 114 F.3d 571, 577 (6th Cir. 1997).

### 2. Analysis

On November 18, 1997, Lott filed with the district court a motion for leave to conduct discovery, which the district court granted in part on March 18, 1998, except insofar as it sought leave to allow Lott to take the depositions of his previous counsel. The district court ordered the parties to complete discovery by May 15, 1998. Lott also requested an evidentiary hearing. In response to this request, the district court ordered him to brief for the court the reasons for his entitlement to an evidentiary hearing, pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Briefing was to be completed by April 27, 1998. On April 23, 1998, after having already submitted some briefing on the issue, Lott requested an additional three weeks to file a supplemental brief on the same issue, so that he could include information within the brief that had been gained as a result of discovery. The district court granted Lott's request.

One month later, on May 22, 1998, after having completed the discovery permitted by the court, Lott filed an unopposed

"incredible hypothesis." *Id.* Yet the Ohio high court also acknowledged that "[i]t is true that the trial court convicted Lott on circumstantial evidence." *Id.* Amid Lott's continued protestation of innocence, this is the most troubling aspect of the case. Although habeas review does not permit petitioners to re-try their cases in federal court, we must ensure that state convictions are supported by constitutionally adequate evidence. This safeguard is especially important when, as here, the petitioner argues that operation of procedural default rules would result in a miscarriage of justice because, according to Lott, he is actually innocent of the aggravated murder.

Although the parties have not argued the point, and we therefore reserve judgment on it, we should note that the evidence supporting Lott's conviction is reinforced by his interview with the Cuyahoga County Sheriff's Department on the afternoon of his arraignment. *See Motion to Take Judicial Notice of State Court Proceedings*, Exhibit H. The police report of the interview reads:

> When questioned about the above incident with Mr. John McGrath he [Lott] started crying. He stated he never intended to hurt Mr. McGrath. He went over to Mr. McGrath['s] house at 7:00 A.M. sometime in the middle of July and went to the back of the house and broke out a basement window. He went into the house and found Mr. McGrath in a front bedroom on the main floor of the house. He stated that the next thing he knew Mr. McGrath was tied up. He remembers using either telephone cord or electrical wire to tie him up. McGrath wasn't in bed when this took place but doesn't remember or know why he wasn't.

> After he was tied up he took his car keys which were on a dresser or table either in the bedroom or the room next to it and left the house and got into the car, which was in the driveway and drove off with it. He described McGrath['s] car as being a smaller model car, dark in color.

without merit. Turning first to the cause and prejudice inquiry, we find that Lott cannot meet his burden. First, as the district court noted, Lott's counsel might reasonably have made a strategic decision not to raise this claim, particularly in light of the fact that the description provided by McGrath was not so materially different from Lott's actual appearance as to have affected the outcome of the trial. Second, the district court also observed that even if Lott's claim had been properly raised, it would have likely been rejected, both because McGrath's absence from trial made his prior description unnecessary for impeachment purposes, and because Lott's counsel successfully argued at trial that McGrath's statements were inadmissible hearsay. We agree and cannot conclude that the failure of Lott's counsel to assert this claim was an error of constitutional magnitude sufficient to establish cause for his default.

On the exhaustion question, as already discussed, where a habeas petitioner files a mixed petition containing both exhausted and unexhausted claims, a district court may deny the petition upon a finding that the petitioner has no available remedy in state court and to dismiss the petition would amount to nothing more than a futility. Such is the case here. Because Lott's claims are procedurally barred -- his attempt to argue the ineffectiveness of his counsel as cause for that bar is unavailing -- we are foreclosed from considering these claims, absent a showing that failure to do so would result in a manifest miscarriage of justice.

### b. Miscarriage of Justice

Even in the absence of cause and prejudice, a petitioner may overcome a procedurally defaulted claim upon a showing of actual innocence. *See Schlup v. Delo*, 513 U.S. 298, 314-15 (1995); *Herrera v. Collins*, 506 U.S. 390, 417 (1993). Lott has long proclaimed his innocence in the killing of John McGrath, suggesting instead that the victim's own careless smoking was the cause of death. *See State v. Lott*, 555 N.E.2d 293, 302 (Ohio 1990). In affirming Lott's death sentence, the Ohio Supreme Court dismissed this explanation as an

motion to compel discovery and to modify the scheduling order, because a City of Cleveland Police Department records custodian had failed to appear at a scheduled records deposition. Lott sought testimony from the custodian concerning "documents of investigation and analysis of fingerprints, documents or video or audio recordings relating to physical descriptions of the suspect, or any documents from the prosecutor's files relating to fingerprints or witness identification of the suspect or documentation of a decision to withhold such information from [Lott]," which Lott believed to be in the possession of the City of Cleveland Police Department. The court never ruled on the motion, and on March 25, 1999, both parties filed a joint motion for a status conference to resolve the discovery dispute.

On March 31, 1999, the district court denied Lott's motion because: (1) Lott sought to extend an already expired deadline (and one which had previously been extended), thus rendering the motion untimely; (2) Lott's counsel failed to certify that his informal, good-faith efforts to resolve the dispute had been unsuccessful; (3) Lott's counsel never attempted to address the dispute by resort to a telephone conference, as required by Local Rule 37.1; and (4) a review of the motion revealed that it was unnecessary, in light of the City of Cleveland's explanation, after it had conducted a thorough search, that the requested documents were not within its possession. The district court also denied the parties' joint motion for a status conference and Lott's request for an evidentiary hearing. On April 14, 1999, Lott filed a motion to alter or amend the district court's judgment, pursuant to Fed. R. Civ. P. 59, which the district court denied on August 26, 1999. [2]

---

[2] Lott argued, *inter alia*, that the district court erroneously denied his motion to compel and prevented him from obtaining, through discovery, information to which he was entitled pursuant to a prior subpoena duces tecum that had been issued by the district court. In denying Lott's motion, the district court found that Lott had failed to comply with the relevant local rule; that, in any event, there was no discovery "dispute," because the City of Cleveland had turned over all documents in its possession and

### a. Discovery

Lott contends that the district court, in denying his motion to compel discovery, erroneously found: (1) that the motion was untimely, and (2) that the motion did not contain a certification from counsel stating that good-faith efforts to resolve the discovery dispute had been unsuccessful. In point of fact, Lott argues, the motion, which was the first and only one that had been filed, had been filed consistent with local discovery rules and did contain a good-faith certification from counsel. In light of the foregoing, and because the district court found that Lott had demonstrated good cause to conduct discovery, Lott contends that he was entitled to have his motion granted, and that the district court's failure to do so was error. *See Bracy v. Gramley*, 520 U.S. 899, 901 (1997); *Lynott*, 929 F.2d at 232.

It appears that the district court's conclusion that Lott's motion was deficient rested in part on erroneous factual determinations. First, as to the question of timeliness, our review of the record suggests that, while it is true that Lott's motion sought to extend a deadline that had already expired, the deadline had not been previously extended, as the district court suggested. Moreover, while the district court correctly concluded that a motion to compel discovery must be filed within ten days of the discovery cut-off date, *see* N.D. Ohio R. 37.1, Lott in fact did comply with this rule, filing his motion on May 22, 1998, seven days after the May 15, 1998, discovery deadline. Second, it is undisputed that Lott's counsel attached to Lott's motion a letter to the prosecutor detailing counsel's difficulty in obtaining records from the City of Cleveland Police Department. We see no reason why such a letter would not qualify as the requisite good-faith certification from counsel. Despite these seemingly erroneous factual determinations, we cannot conclude that the district

---

simply did not have what Lott requested; and that, even if the evidence were in the City of Cleveland's possession and showed what Lott said it would show, Lott would nevertheless not be entitled to the requested relief.

conclusion is debatable among reasonable jurists." Although we recognize that the applicable AEDPA standard has changed since the district court considered this issue, *see Harris v. Stovall*, 212 F.3d 940, 942-43 (6th Cir. 2000) (discussing the Supreme Court's rejection in *Williams v. Taylor*, 529 U.S. 362, 408-13 (2000), of the "debatable among reasonable jurists" standard), we are nevertheless unpersuaded that the state court's conclusion on this point resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). We thus reject Lott's argument.

### iii. Oil-Burning Lamp/Frayed Telephone Cord

Lott maintains that Respondent withheld evidence concerning McGrath's ownership of an oil-burning lamp, which, if presented at trial, would have called into doubt the Government's theory that McGrath did not own a lamp (and thus had no reason to own heating oil) and that Lott brought a bottle of heating oil into McGrath's house with the express purpose of using it to set McGrath on fire. Lott also argues that Respondent withheld information concerning a frayed telephone cord found near the location of McGrath's body, which McGrath's assailant allegedly used to bind and restrain him. The introduction of this evidence at trial, Lott argues, "so infused the trial with unfairness as to deny [him] due process of law." Because the Cuyahoga County Court of Appeals and the Ohio Supreme Court rejected this claim on the merits, he contends that it cannot be procedurally defaulted. Although Lott challenged on direct appeal the trial court's admission of this evidence on the basis that the State failed to establish its relevance, it appears that Lott never raised in state court the specific objection he raises today, and thus we are foreclosed from reviewing it.

### iv. Cause and Prejudice/Exhaustion

As he has done with his other claims, Lott argues that his *Brady* claim may be unexhausted, but not procedurally barred, and if we do find a procedural bar, then he can demonstrate cause and prejudice to excuse that bar. Both arguments are

ineffective-assistance-of-trial-counsel claim), the instant *Brady* claims are not defaulted, reasoning that he fairly presented to the state courts the legal theory on which his claim was based, even if he failed to present all of the factual premises for that claim.

Citing *Landano v. Rafferty*, 897 F.2d 661 (3d Cir. 1990), the district court found that "[p]resenting two claims under the same legal umbrella but with entirely different factual underpinnings, as here, does not constitute fair presentation to the state courts"; Lott's description-by-victim claim was not the "substantial equivalent" of the fingerprints claim presented to the state courts, because he failed to present "*both* the legal theory and the facts on which [his] federal claim rests." *Landano*, 897 F.2d at 669; *see also Daye v. Attorney Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1982) ("In order to have fairly presented his federal claim to the state courts the petitioner must have informed the state court of both the factual and the legal premises of the claim he asserts in federal court."). We agree with the district court that Lott's presentation of a *Brady* claim premised on the fingerprints issue does not permit him now to put forward other supposed *Brady* claims predicated on factually dissimilar premises.

Even if Lott's claim were not procedurally barred, he would, as the district court found, nevertheless have difficulty demonstrating that "the information which forms the basis for this claim was outside, or *dehors*, the record at the time of his direct state court appeals, or that it became available to him only *after* state avenues to address it were no longer available to him." The district court rejected Lott's suggestion that the fingerprint evidence would have served to undermine the only identification of Lott at trial (Coleman's testimony) in a case that was built entirely of circumstantial evidence, reasoning that "[w]hile a court could conclude that the lack of fingerprints might serve to weaken the force of Coleman's identification of Lott as the individual driving McGrath's car, the standard under the AEDPA is not whether the district court would come to the same conclusion, but whether the

court abused its discretion in denying Lott's motion. The remaining considerations on which the district court's denial was based -- Lott's failure to resort to the requisite telephone conference and the City of Cleveland Police Department's denial that it possessed the documents -- provided a sufficient basis for the district court to conclude that denial was appropriate.

### b. Evidentiary Hearing

As already discussed, the district court permitted Lott three weeks after the completion of discovery to file a supplemental brief outlining the reasons for his entitlement to an evidentiary hearing under AEDPA. Lott had already argued unsuccessfully that AEDPA did not change the legal standard for granting an evidentiary hearing.[3] The district court refused to allow him the opportunity to submit a supplemental brief on the issue, which he contends would have included exculpatory evidence obtained during the federal discovery process; such evidence would have related to "Mr. Lott's *Brady*, identification, ineffective assistance of counsel, and cause of death claims."

Lott now argues that the district court's refusal to permit additional briefing, and an evidentiary hearing on the issues raised in that briefing, was error. Such a hearing, according to Lott, would have resolved material factual disputes, including those regarding "(i) the cause and prejudice excusing any procedural default that the Court deemed to exist; and (ii) the merits of his claims (including the identification, ineffective assistance of counsel, *Brady*, and cause of death claims)." He also suggests that if the district

---

[3] Lott now argues that if AEDPA did change the relevant standard, then application of AEDPA would be unconstitutionally retroactive under *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994). Lott's argument is wholly without merit. *See Lindh v. Murphy*, 521 U.S. 320, 324-26, 337 (1997) (noting that *Landgraf*'s default rule on the question of retroactivity is not implicated where, as here, a habeas petition was filed after the effective date of AEDPA).

court had granted his motion to compel discovery, discussed *supra*, he could have included with the supplemental brief documents obtained from the City of Cleveland Police Department.

Respondent emphasizes Lott's contradictory positions that, on the one hand, AEDPA's enactment had no effect on the question whether he was entitled to an evidentiary hearing, and, on the other, that the district court abused its discretion by denying him the opportunity to brief the impact AEDPA had on his entitlement to an evidentiary hearing. Respondent also suggests that Lott's claim is fatally flawed because he fails to discuss how the district court's denial of his request for an evidentiary hearing prejudiced him; in the absence of such a discussion, Lott cannot demonstrate that the district court abused its discretion. On the question of the district court's refusal to permit Lott to append additional discovery materials to his brief, Respondent again argues that Lott has failed to show how this denial prejudiced him; in any event, Respondent notes, the district court reviewed the disputed materials when it evaluated Lott's motion to alter or amend the judgment and concluded that they had no impact on its decisions concerning either Lott's entitlement to additional discovery and an evidentiary hearing, or the underlying merits of any of his claims.

While Respondent notes correctly that Lott has taken inherently contradictory positions, we presume that Lott is making alternative arguments, which he is permitted to do. Lott's first argument -- that his right to an evidentiary hearing is not governed by AEDPA -- is incorrect as a matter of law. Where a habeas petitioner has filed his petition *after* the effective date of AEDPA (April 24, 1996), section 2254(e)(2) of AEDPA provides the relevant standard for determining whether he is entitled to an evidentiary hearing. *See Lindh*, 521 U.S. at 326-27, 337. Lott filed his habeas petition on February 3, 1997. Section 2254(e)(2) provides:

(e)(2)        If the applicant has failed to develop the
              factual basis of a claim in State court

trial error [including the fingerprints claim] are barred by application of the doctrine of res judicata" because Lott failed to raise them on direct appeal. *Id.* at *8. Accordingly, Lott's claim is without merit.

### ii. McGrath's Description of Assailant/Descriptions of Other Suspects

Lott argues that Respondent suppressed evidence from him concerning McGrath's description of his attacker, which Lott suggests differed significantly from his physical appearance ("description-by-victim claim"). Specifically, McGrath described his attacker to police, in a statement that was not introduced at trial, as a six-foot-tall, medium-build, very light-complexioned African-American man with long straight hair, who, at the time of the assault, was wearing a light-colored shirt, white-gray tennis shoes, and a cap without a bill. Lott is a medium-to-dark-complexioned African-American man, who is five feet, ten inches tall, 176 pounds, with short hair; at the time of Lott's arrest, police found light-colored tennis shoes in the trunk of his car. Lott also alleges, in what we will refer to as his "other-suspects claim," that Respondent withheld from Lott: (1) other physical descriptions of McGrath's assailant that were consistent with McGrath's description; (2) evidence that a light-complexioned man informed police officers that he was wanted for questioning in connection with McGrath's death and several burglaries; (3) evidence that one of eyewitness Deidra Coleman's neighbors described the perpetrator as having a heavy build with a pot belly; and (4) evidence that McGrath told police in 1983 that he could identify the man who burglarized his home in 1983.

Lott failed to raise the description-by-victim claim at all in the state courts, and failed to raise the other-suspects claim either in the state courts or in his federal habeas petition, and thus, absent a showing of cause and prejudice for the defaults, is precluded from raising them now. He argued unsuccessfully before the district court that, because he raised his fingerprints claim on direct appeal (as part of an

resurrect Lott's claim.[13]   Similarly, Lott's argument that his claim was revived by the Ohio Court of Appeals's decision of his *Murnahan* motion (and its discussion of the merits of Lott's fingerprints claim) also must fail.

Lott also raised this *Brady* claim in his petition for state post-conviction relief.  He now contends that a state court reached the merits of this claim both when the Cuyahoga County Court of Common Pleas granted Respondent's motion to dismiss, concluding that there were no substantive grounds for post-conviction relief, and when the Cuyahoga County Court of Appeals found that Lott had failed "to raise a genuine issue of material fact that there are substantive constitutional grounds for relief." *Lott*, 1994 WL 615012 at *7.[14]   Lott, however, neglects the fact that the Court of Appeals, in the last reasoned decision on the subject, made an express finding that "all of appellant's claims alleging pre-

---

[13]We are mindful that such a rule may be perceived by some as unduly punitive of a petitioner for his appellate counsel's failure to engage in what might be viewed as double-pleading -- that is, assigning error to a discrete violation, and then using the same alleged violation as a predicate for an ineffectiveness claim.  This may be particularly so in those cases where, for any number of reasons, a petitioner's appellate counsel fails to raise an issue on direct review, an error, which while not sufficiently egregious as to constitute ineffective assistance, has the far-reaching effect of limiting the issues that subsequent counsel may raise.  Unfortunate though it may be that the action (or inaction) of a petitioner's counsel on direct appeal may forever foreclose certain issues from appellate review, and thereby force us to turn a blind eye to what might be a meritorious claim,  the law on this point is clear, and we are bound to follow it.

[14]As further evidence that the merits of his claim were addressed, Lott points to the State's arguments in its brief in opposition to Lott's post-conviction petition that "Petitioner received all discovery to which he was entitled"; that the absence of fingerprints had been disclosed to Lott's counsel; that, in any event, no exculpatory evidence had been withheld; and that Lott had not suffered the ineffective assistance of counsel for the nondisclosure of exculpatory evidence.  He makes the unsupported assertion that the State's argument of the merits in its brief estops it from now arguing that his claim is procedurally barred.  We disagree.

proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –

(A)    the claim relies on –

    (i)    a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

    (ii)    a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B)    the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

Lott's second argument, that the district court abused its discretion by refusing to hold an evidentiary hearing, is also without merit.  The district court concluded that Lott was not entitled to an evidentiary hearing because he was unable "to explain when and how he obtained the police notes which purportedly contain a misidentification by McGrath, and ha[d] presented no other evidence to suggest the existence of a factual predicate that could not have been *previously* discovered through the exercise of due diligence."  Neither in his motion to alter or amend the judgment nor in his brief for purposes of this appeal did Lott address: (1) when and how he obtained the new factual information; (2) why that information could not have been previously discovered through the exercise of due diligence; (3) whether the facts underlying the claim would establish by clear and convincing evidence that, but for the omission of these facts at trial, no reasonable factfinder would have found Lott guilty; and, (4) as suggested by Respondent, how the district court's

denial of an evidentiary hearing prejudiced him.[4]  In light of the foregoing, we are not persuaded that the district court's denial of an evidentiary hearing was an abuse of discretion.

## B. Jurisdiction

### 1. Standard of Review

In a habeas corpus proceeding, we review de novo a district court's legal conclusions and its factual findings for clear error.  *See Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).  A habeas petitioner's ineffective-assistance-of-counsel claim is a mixed question of law and fact, to which a district court's determinations are subject to de novo review. *See Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1999).  We review de novo a district court's procedural default rulings. *See id.*

### 2. Analysis

The State of Ohio has instituted a statutory scheme whereby a criminal defendant may waive a jury trial and request trial by a three-judge panel:

> In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury.  Such waiver by a defendant, [sic] shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof.

Ohio Rev. Code Ann. § 2945.05 (West 2000).  Lott argues that he never executed a valid waiver of his right to trial by jury, because his jury waiver was neither file-stamped nor formally entered in the trial record.  In the absence of a valid

---

[4]Our independent review of the evidence Lott sought to use as the basis for an evidentiary hearing reveals that, even assuming Lott had not been able to discover the documents with the exercise of due diligence, he would not have succeeded in meeting the "clear and convincing standard" required of § 2254(e)(2)(B).

### a. Procedural Default

### i. Fingerprints

Lott contends that Respondent failed to disclose that police officers were unable to find any of Lott's fingerprints either on or inside McGrath's car, evidence that likely would have drawn into question the veracity of Deidra Coleman's testimony that Lott was the man she saw sitting in McGrath's car.  Lott raised this claim on direct appeal (in the context of arguing that his trial counsel were ineffective for failing to raise this issue during the penalty phase at trial); as his sixteenth ground for relief in his state post-conviction petition; and as his second and twenty-first assignments of error in his *Murnahan* motion (in the context of arguing that his appellate counsel were ineffective for failing to raise *Brady* violations committed by the State).  The question before us is whether Lott's direct appeal of this issue in the context of an ineffective-assistance-of-counsel claim is sufficient to save this issue from being deemed procedurally barred.  As we have already noted, it does not.

Perhaps recognizing that this claim is procedurally barred, Lott argues that the Ohio Supreme Court's decision of Lott's fingerprints claim raised on direct appeal was a decision on the merits, which now precludes Respondent from arguing that the claim is procedurally barred.  It is true that the Ohio Supreme Court, in reviewing Lott's claim, found that "[t]his [fingerprint] evidence simply established that Lott's fingerprints were not found on McGrath's car. . . . [but the] mere absence of Lott's fingerprints does not refute evidence admitted at trial and is therefore not exculpatory," *State v. Lott*, 555 N.E.2d 293, 308 (Ohio 1990), suggesting that it reached the merits of Lott's claim.  Because, however, the court's discussion was in the context of analyzing Lott's ineffective-assistance-of-counsel claim (and not the discrete claim Lott now raises), that discussion, without more, cannot

### D. *Brady* claim

### 1. Standard of Review

In a habeas corpus proceeding, we review de novo a district court's legal conclusions and its factual findings for clear error. *See Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998). We review de novo a district court's procedural default rulings. *See id.*

### 2. Analysis

Lott argues that habeas relief is appropriate because the State of Ohio violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose exculpatory evidence to him concerning the following: (1) the absence of fingerprints on McGrath's car; (2) McGrath's description of his assailant and other eyewitnesses' descriptions of other possible suspects, which were at variance with his physical appearance; and (3) McGrath's ownership of an oil-burning lamp.[12] Respondent contends that all three pieces of this alleged *Brady* material are procedurally barred from review, and that two pieces were never raised in the state proceedings below, and as such, are unexhausted. Even if we were to set aside these procedural default and exhaustion questions, Respondent argues, Lott still would not be entitled to relief because he cannot demonstrate both that Respondent suppressed the evidence and that such evidence was material to the outcome of his case.

---

[12] Lott suggests that the record presently before us is not sufficiently developed to permit us "to answer the fact-intensive inquiries regarding the State's suppression and counsel's ineffectiveness as cause," and asks us to allow him the opportunity to take additional discovery and to remand the case with instructions that the district court hold an evidentiary hearing on the results of that discovery. For the reasons discussed *supra*, we reject this argument.

waiver, he contends, the three-judge panel that decided his case never had jurisdiction to try him and the resulting conviction is therefore void.[5] Respondent submits that Lott's claim is procedurally barred because he failed to raise it in his direct appeal or at any other point during the pendency of the state court proceedings. *See State v. Pless*, 658 N.E.2d 766, 770 (Ohio 1996) (holding that "the failure to comply with R.C. 2945.05 may be remedied only in a direct appeal from a criminal conviction").[6] Lott responds that: (1) this claim is

---

[5] We note that not only did Lott fail to raise this issue on direct appeal, but he also at various times conceded that the requirements of §§ 2945.05 and 2945.06 had been satisfied, even attaching the filed waiver form to his petition for post-conviction relief.

[6] Respondent also argues, in the alternative, that even if Lott's jurisdiction claim were not procedurally barred, Lott's claim, founded on alleged violations of a state statute (§ 2945.05) and state case law (*Pless*), would nevertheless be an inappropriate basis for the grant of a writ of habeas corpus, as errors of state law, without more, may not provide a basis for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (noting that only where a state law violation is also a violation of federal law may a petitioner obtain federal habeas relief). We agree that it is indeed a close question whether a court's failure to comply with each of § 2945.05's requirements is sufficient to invalidate an otherwise effective waiver, such that it can be fairly said that the ensuing trial was fundamentally unfair. It is nevertheless a question properly before us on habeas review.

Lott's jurisdiction claim, although predicated on state law, directly implicates the federal question of whether Lott's trial, in the absence of a jury, violated his Sixth Amendment right to a jury trial and his Fourteenth Amendment right to due process. While a claim based *solely* on an error of state law is not remediable on a petition for habeas corpus relief, where "a state court's error in interpreting or applying its own law has rendered the trial that convicted the appellant so fundamentally unfair as to have deprived appellant of substantive due process in violation of the U.S. Constitution," we may properly provide habeas relief. *Norris v. Schotten*, 146 F.3d 314, 329 (6th Cir. 1998). Thus, the task before us is to determine whether the state-law jurisdictional error alleged by Lott so deprived him of due process as to provide a basis for federal habeas relief. Such a determination necessarily requires some consideration of the merits of his claim, *see Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993) (conducting a threshold review of the merits of petitioner's state-law claim to determine whether his trial was

not procedurally barred because a state court reached its merits; (2) this claim, although unexhausted, is not procedurally barred; (3) even assuming this claim is procedurally barred, Lott can demonstrate cause and prejudice for the default; and, (4) in any event, a procedural default analysis is inapposite, because a challenge of a court's subject-matter jurisdiction may be made at any time. Each argument ultimately fails.

### a. Whether claim is procedurally barred because state court reached merits.

Relying on the Cuyahoga County Court of Appeals's language in the decision on his *Murnahan* motion, Lott argues that his jurisdiction claim is not procedurally barred because the Court of Appeals reached the merits of the claim. The Court of Appeals stated that "[a] review of the record demonstrates that the appellant waived his right to a jury trial in conformity with Crim. R. 23(A) and R.C. 2945.05," suggesting that the Court of Appeals decided the merits of the waiver question (and thus did not raise a procedural bar to consideration of the issue). That language, however, expressly referred to Lott's sixteenth proposed assignment of error, which concerned only the ineffectiveness of his appellate counsel for failing to argue on appeal the involuntariness of Lott's jury waiver. At no point did Lott ever raise in his *Murnahan* motion the instant jurisdiction issue as a discrete claim; the court, therefore, never had an opportunity to reach that precise issue.

It is true that Lott raised the jury-waiver issue, discussed *infra*, in state court. It is also true that the voluntariness of his waiver and the court's compliance with the requirements of § 2945.05 to effectuate a valid waiver are related issues -- the former is a function of the latter. The relatedness of the

---

fundamentally unfair), a point which Judge Boggs's concurring opinion impliedly concedes, *post* at 48 (noting that Judge Boggs's review of "the record evidence conclusively demonstrates that [Lott's] federal rights were not violated").

reveals that he cannot prevail. Although it appears that no Ohio court has addressed the precise question presented by Lott's claim, the Ohio Supreme Court confronted a similar issue in *State v. Smith*, 684 N.E.2d 668 (Ohio 1997).[11] In *Smith,* a defendant appealed his non-capital counts of conviction to the appropriate Court of Appeals, and, in conformity with the Ohio Constitution and an implementing statute, appealed his capital convictions directly to the Ohio Supreme Court. The Court of Appeals dismissed the non-capital charges for lack of jurisdiction, finding that appeal was proper only to the Ohio Supreme Court. The Ohio Supreme Court affirmed and found that it [the Ohio Supreme Court] had jurisdiction "over the whole case, instead of counts, charges, or sentences." *Id.* at 684.

Similarly, we are persuaded that Lott's waiver of a jury trial with respect to one case conferred jurisdiction on the three-judge panel to hear the entire case. *Cf. In re Waite*, 468 N.W.2d 912, 917 (Mich. Ct. App. 1991) ("[W]here it is apparent from the allegations that the matter alleged is within the class of cases in which a particular court has been empowered to act, jurisdiction is present. Any subsequent error in the proceedings is only error in the 'exercise of jurisdiction,' as distinguished from the want of jurisdiction . . . ."). That Lott's murder case had been consolidated with other cases involving other offenses did not confer jurisdiction only as to the murder charge and not to the other offenses. The three-judge panel had jurisdiction over the entire case and all counts and charges contained within that case. Lott's argument, therefore, must fail.

---

[11]Respondent also cites *State v. Filiaggi*, 714 N.E.2d 867 (Ohio 1999), in support of its position. *Filiaggi*, however, is inapposite. That case involved a defendant's appeal of his conviction for capital and non-capital charges, in which he challenged the trial court's decision to employ a procedure whereby a three-judge panel decided certain counts, and a single member of the three-judge panel decided the remaining ones. The court found no jurisdictional defect, but nevertheless concluded that the procedure violated § 2945.06 and remanded the case for resentencing. *See id.* at 876-77.

inquiry into whether Lott understood that he had a constitutional right to a jury trial and whether Lott had had the opportunity to discuss with his counsel the rights that he was forfeiting by waiving a jury trial. The trial court conducted no independent inquiry into the extent of the alleged discussions between Lott and his counsel, but rather, accepted the word of Lott and Lott's counsel that Lott understood those rights. The district court found that "a trial court need not conduct a particularly detailed oral inquiry before finding that a waiver is knowing and voluntary," and concluded that the colloquy between the trial court and Lott and his counsel demonstrated that Lott knowingly, intelligently, and voluntarily waived his right to a jury trial. On the facts of this case, we find no error.

### b. Case Nos. CR212720 & CR211261

On September 5, 1986, a Cuyahoga County grand jury indicted Lott in Case No. CR211261, charging him in Count 1 with the September 7, 1983, aggravated burglary of McGrath; and in Count 2 with the September 7, 1983, petty theft of McGrath. In Case No. CR212720, Lott was indicted on October 17, 1986, and charged in Count 1 with the July 14, 1986, aggravated arson against McGrath (with violence and aggravated felony specifications). Lott argues that the trial court never obtained a jury waiver as to Case No. CR211261 and Case No. CR212720, and that his trial counsel were not appointed to represent him with respect to these cases. In the absence of a valid waiver, the three-judge panel lacked jurisdiction to try him without a jury, and the convictions that flowed from that trial, at least as to Case No. CR212720 and Case No. CR211261, are void. Respondent asserts that the trial court had jurisdiction over all of the charges against Lott, and his waiver of trial as to one charge applied to all related charged offenses.

We reject Lott's argument. First, while not dispositive of the question before us, we note that Lott made no contemporaneous objection to the trial court's exercise of jurisdiction over Case No. CR212720 and Case No. CR211261. Second, a review of the merits of his claim

issues, however, does not save Lott's claim. Lott's jurisdiction claim is not based on the same theory as the waiver claim that was presented in state court, *see Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998), and, in any event, Lott himself apparently viewed the issues as distinct, as evidenced by the fact that he raised them as *separate* assignments of error in his federal habeas petition. Lott's jurisdiction claim, therefore, is procedurally barred.[7]

### b.  Whether claim is unexhausted, but not procedurally barred.

Lott argues that, even assuming the jurisdiction issue was not adequately presented in the *Murnahan* motion, the district court should have concluded that the claim was unexhausted and permitted him to present this claim before a state court. Because this claim has not yet been aired in a state court proceeding, Lott contends, then no state court has enforced a procedural sanction against him, and his claim necessarily cannot then be procedurally barred, and the district court's finding of procedural default, therefore, was erroneous. We disagree.

State prisoners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The district court in the case at bar, quoting our decision in *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), found that the jurisdiction issue was procedurally barred because Lott lacked any remedy for the alleged error in

---

[7] We also note that *Pless*, the case on which Lott most heavily relies to argue that strict compliance with § 2945.05 is required for a valid jury waiver, also expressly provides that "[t]he failure to comply with R.C. 2945.05 may be remedied only in a direct appeal from a criminal conviction." 658 N.E.2d at 770. Thus, on this basis alone, Lott's failure to raise this issue on direct appeal bars him from doing so now.

the state courts; the absence of available relief, it reasoned, rendered moot the exhaustion question: "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." The district court expressly rejected Lott's contention that he had available to him an opportunity to file a successor delayed application for reconsideration, noting that "[t]here is no available mechanism through which Lott could present his claims to the Ohio state courts."

The district court's conclusion is correct if its underlying assumption -- that Lott was legally prohibited from raising the jurisdiction issue in a post-conviction action -- is in fact true, a question we cannot answer given the record presently before us. Lott states that he filed his first successor post-conviction petition on March 31, 2000, raising this precise jurisdiction question. Because we do not have before us the actual petition, or information concerning the posture of this action, we cannot determine whether the district court properly determined that Lott had no remedy available in state court.

Even assuming Lott does have a remedy in state court, however, we may nevertheless consider his unexhausted jurisdiction claim. *See* 28 U.S.C. § 2254(b)(2); *see also Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998) ("Because . . . we conclude that [petitioner] does not prevail on the merits, we may, pursuant to § 2254(b)(2), deny relief, notwithstanding Jones' failure to exhaust state remedies."); *Hoxsie v. Kerby*, 108 F.3d 1239, 1243 (10th Cir. 1997) (citation omitted) (noting that, even if a habeas petitioner has an available remedy in state court, a district court may nevertheless deny the petitioner's unexhausted claim without permitting him an opportunity to avail himself of the remedy in state court if to do so would avoid "useless litigation" in state court). Because, for the reasons set forth herein, we conclude that Lott's jurisdiction claim lacks merit, and any resort to the state courts would amount to a mere futility, we need not

> THE COURT:    Very well.
>
>                This Court will accept the defendant's waiver of a trial by jury on the count of aggravated murder with specifications and his election to be tried by a three-judge panel of this court.

It is well settled that "whether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case." *United States v. Martin*, 704 F.2d 267, 272 (6th Cir. 1983). In *Martin*, we held that a criminal defendant may waive a jury trial if the waiver is in writing, if the government attorney consents to the waiver, if the trial court approves the waiver, and if the defendant's waiver is voluntary, knowing, and intelligent. In the present action, only the fourth factor is in dispute. A waiver may be voluntary, knowing, and intelligent if the defendant has a minimum amount of knowledge concerning his jury trial right and the mental capacity to understand the implications of the waiver of that right. *See id.* at 273. Although a defendant need not have a detailed, technical knowledge of this right, "[a] defendant is [deemed] sufficiently informed to make an intelligent waiver if he was aware that a jury is composed of 12 members of the community, [that] he may participate in the selection of the jurors, [that] the verdict of the jury must be unanimous, and that a judge alone will decide guilt or innocence should he waive his jury trial right." *Id.* at 273. We did not, however, adopt a mandatory rule requiring trial courts to interrogate defendants prior to accepting a jury trial waiver, but instead, offered a "suggestion" that district courts personally inform defendants of the "benefits and burdens of jury trials on the record prior to accepting a proffered waiver." *Id.* at 274.

We believe it is a close question whether the colloquies between Lott and the trial judge and between Lott's counsel and the trial judge were constitutionally sufficient. The colloquy between the trial court and Lott consisted of a short

by Gregory Lott, witnessed by James Kersey and Elmer Giuliani.

Is this, sir, a form that was executed by you indicating to this Court that you are waiving your right to a jury trial on the charge of aggravated murder, and have agreed to have your case tried to a three-judge panel?

DEFENDANT:   Yes, sir.

The trial court then engaged in the following colloquy with Lott's counsel:

THE COURT:   Mr. Giuliani, have you had an opportunity to fully explain to your client his rights to a trial by jury in this case?

MR. GIULIANI: Yes, sir.

THE COURT:   Have you fully explained to him his right to elect to have his case tried to a three-judge panel in lieu of a trial by a jury in this case?

MR. GIULIANI: Yes, sir.

THE COURT:   Are you fully satisfied that he fully understands those rights?

MR. GIULIANI: I am.

THE COURT:   Are you satisfied that this is a voluntary act on his part, namely, to have his case tried to a three-judge panel?

MR. GIULIANI: Yes, sir.

await a state court's determination of what we have already concluded.

### c. Whether procedural default is excused by showing of cause and prejudice.

Lott asserts that even if his jurisdiction claim is procedurally barred, he can demonstrate cause and prejudice to excuse the default. We are not persuaded. To establish cause, Lott necessarily must argue that his appellate counsel were ineffective for failing to raise the jurisdiction claim, which requires us to examine first whether his counsel's error was so egregious as to render their assistance below that guaranteed by the Sixth Amendment, and second, whether Lott suffered prejudice as a result of his counsel's error. *See Strickland v. Washington*, 466 U.S. 668, 687, 691-92 (1984). Lott can make neither showing.

Lott never presented the state courts with an opportunity to review his ineffective-assistance-of-appellate-counsel claim as cause for the default of his jurisdiction claim, and thus, is procedurally barred from making such an argument now. *See Murray v. Carrier*, 477 U.S. 478, 488-89 (1986). Even assuming, however, that Lott's claim were not procedurally barred, Lott cannot demonstrate cause for his procedural default, because he cannot establish the requisite cause for his ineffective-assistance-of-appellate-counsel claim. At the time that Lott filed his *Murnahan* motion on June 30, 1993, it was unclear whether, under Ohio law, a defendant's strict compliance with § 2945.05 was required to execute a valid waiver, or whether substantial compliance was sufficient. *Compare State v. Harris*, 596 N.E.2d 563, 568 (Ohio Ct. App. 1991) (holding that strict compliance with § 2945.05 is required to execute a valid waiver) *with State v. Morris*, 455 N.E.2d 1352, 1355 (Ohio Ct. App. 1982) (suggesting that substantial compliance is satisfactory, provided that § 2945.05 is satisfied "by a writing signed by the defendant himself and filed with the court") *with Marysville v. Foreman*, 603 N.E.2d 1155, 1158 (Ohio Ct. App. 1992) (noting that "[w]here there is a written waiver filed with the court after arraignment and

opportunity to consult with counsel, there has been a substantial compliance with the applicable rules and statutes and there is no error"). Thus, we cannot conclude that Lott's counsel should have reasonably anticipated in 1993 the Ohio Supreme Court's 1996 decision in *Pless*, which finally resolved the issue and required strict compliance with each requirement of § 2945.05 for execution of a valid jury waiver. *See Alcorn v. Smith*, 781 F.2d 58, 62 (6th Cir. 1986) (noting that "nonegregious errors such as failure to perceive or anticipate a change in the law . . . generally cannot be considered ineffective assistance of counsel"); *State v. Earl*, No. 62610, 1998 WL 474193, *5 (Ohio Ct. App. Aug. 10, 1998) (unpublished) ("[A]ppellate counsel is not responsible for accurately predicting the development of the law, especially in an area marked by conflicting holdings."). Lott's failure to demonstrate cause makes unnecessary our consideration of whether he can also establish prejudice.

### d.  Whether procedural default analysis is inapposite.

Finally, Lott argues that the question of a court's subject-matter jurisdiction is never waivable and may be raised at any time.  He reasons that an Ohio court has jurisdiction to try a defendant in the absence of a jury only when a defendant waives that right in strict compliance with § 2945.05; where a court disregards the mandatory requirements of § 2945.05, any resulting proceeding is rendered void ab initio for lack of subject-matter jurisdiction, and a challenge of that proceeding may be made at any time.  Thus, Lott submits, the district court's procedural default analysis was inapposite.

The district court rejected Lott's characterization of the jurisdiction at issue in this case as subject-matter jurisdiction, and concluded that § 2945.05 concerned "jurisdiction of the particular case."  "Jurisdiction of the particular case," the district court reasoned, does not, like subject-matter jurisdiction, concern the ability of a court to hear a particular class of cases, but rather is more akin to a statute of limitations or other quasi-jurisdictional bar that prevents a court from hearing a *particular* case that would, in the

Do you fully understand that you have a constitutional right to have your case tried to a jury as it relates to the aggravated murder charge with specification?

Do you understand that?

DEFENDANT:    Yes, sir.

THE COURT:    Have you had an opportunity to fully discuss with your attorneys your rights to a trial by jury in the case of the aggravated murder with specifications and also have you had an opportunity to discuss with them your request or the appropriate request for a trial by a three-judge panel in lieu of a trial by jury?

DEFENDANT:    Yes, sir.

THE COURT:    Very well.

I have before me a form in Case No. 211002 entitled State of Ohio versus Gregory Lott, Court of Common Pleas, Cuyahoga County, Ohio, defendant may waive jury trial.

I, Gregory Lott, the defendant, in the above cause, hereby voluntarily waive and relinquish my right to a trial by jury and elect to be tried by a three-judge panel, in which said cause may be pending.

I fully understand that under the laws of the state I have a constitutional right to a trial by jury.  That is signed

could have reasonably decided not to raise this claim. Furthermore, because the underlying claim lacks merit, it cannot be said that appellate counsel were ineffective for their failure to raise it.

Before we begin our analysis of the merits of Lott's argument, it is instructive to set forth the exchange between Lott and the trial court concerning the issue of Lott's waiver:

THE COURT:  In discussions with the defense counsel prior to coming into court this morning, and in discussions with the prosecutor, it is my understanding at this time that the defendant has indicated to his counsel that in Criminal Case CR-211002, that he would agree and has consented to voluntarily, as indicated that he wishes to withdraw his previous request for a trial by jury with reference to the aggravated murder charge with specifications and consent to have his case tried to a three-judge panel.

Before this Court will accept that waiver and that request, the Court will inquire of the defendant as to whether or not it is his desire, having been appraised of his rights by both the Court and counsel, to waive his right to a trial by jury in these cases, and to agree to have his case tried to a three-judge panel.

Gregory Lott, the Court has been advised by your counsel that you wish to withdraw your previously entered plea -- previous request for a trial by a jury on the count of aggravated murder with specification.

absence of that bar, properly be before it. While it is true that a challenge of a court's subject-matter jurisdiction may be raised at any time, the district court concluded that such was not the case for "jurisdiction of the particular case," which may be waived. In support of its conclusion, the district court relied on *State v. Swiger*, 708 N.E.2d 1033 (Ohio Ct. App. 1998), and *Swiger*'s interpretation of *Pless*, as evidence that the Ohio Supreme Court was referring to something other than subject-matter jurisdiction. *See id.* at 1039 ("If the 'jurisdiction' to which the [Ohio Supreme Court in *Pless*] referred were subject matter jurisdiction, by its very nature, it would be open to challenge at any time. By holding that this defect in the trial court's 'jurisdiction' can be waived if not timely raised, the Supreme Court was apparently referring to something other than subject matter jurisdiction.").

We are not convinced that the district court's conclusion rests on solid ground. In a post-*Swiger* case, the Ohio Supreme Court expressly held that the question whether a defendant was properly tried by a three-judge panel was a jurisdictional matter that can never be waived. *See State v. Filiaggi*, 714 N.E.2d 867, 876 (Ohio 1999) ("The state contends that defendant consented to [a bifurcated procedure whereby a three-judge panel decided certain counts and a single judge decided others] and therefore waived any error. . . . [W]e conclude that this jurisdictional matter cannot be waived."). Thus, Lott may be correct that the district court's procedural default analysis was misplaced. We need not resolve this question, however, because, as discussed *supra*, at the time that Lott sought to waive his right to a jury trial, it was an open question whether *strict* adherence to § 2945.05 was required to execute a valid waiver and confer jurisdiction on a three-judge panel. We believe that Lott's entry of a signed and written waiver made in open court, although not filed and made part of the record, would meet the less restrictive, pre-*Pless* substantial compliance standard. Lott, therefore, is foreclosed from obtaining federal habeas relief on this basis.

## C. Jury Waiver

### 1. Standard of Review

Whether Lott's waiver of a jury trial was knowing, intelligent, and voluntary is a mixed question of law and fact that we review de novo. *See Strozier v. Newsome*, 926 F.2d 1100, 1104 (11th Cir. 1991).

### 2. Analysis

A three-judge panel tried and convicted Lott of offenses stemming from three separate indictments. Lott argues: (1) that, as to Case No. CR211002, the trial court and Lott's trial counsel failed to inform him of the circumstances and consequences of waiving his right to be tried by a jury in a capital case, and (2) that the trial court never obtained from him any jury waiver, valid or otherwise, as to Case No. CR212720 and Case No. CR211261.

### a. Case No. CR211002

On August 8, 1986, a Cuyahoga County grand jury indicted Lott in Case No. CR211002, charging him in Count 5 with the July 23, 1986, aggravated murder of McGrath (with aggravated felony and felony murder specifications); in Count 6 with the July 14, 1986, aggravated burglary of McGrath (with violence and aggravated felony specifications); in Count 7 with the July 14, 1986, aggravated robbery of McGrath (with violence and aggravated felony specifications); in Count 8 with the July 14, 1986, kidnapping of McGrath (with violence and aggravated felony specifications); and in Count 9 with the July 14, 1986, aggravated arson against McGrath (with violence and aggravated felony specifications).

Lott argues that the colloquy between him and the trial judge was inadequate in informing him of the panoply of

### ii. Whether procedural default is excused by showing of cause and prejudice. [10]

Lott argues that any procedural default should be excused. In making a showing of cause, Lott states that his appellate and *Murnahan* counsel were constitutionally ineffective for failing to raise the waiver claim, and suggests that their actions could not have been the results of "a reasonable strategic decision." Relying upon our decision in *Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999), which set forth eleven factors reviewing courts should consider in evaluating claims of appellate ineffectiveness, Lott argues that five such factors weigh in favor of our finding that his counsel were constitutionally ineffective: the omitted issues were significant and obvious; they were stronger than other issues; the appellate court was not required to defer to the trial court; the decision to omit the issue in question was unreasonable and one that only an incompetent attorney would adopt; and the appellate counsel's level of expertise and experience were such that he should have been able to raise successfully the *Pless* jurisdiction issue. On the question of prejudice, Lott maintains that he need not demonstrate prejudice, because the failings of his counsel violated his constitutional right to a trial by jury, and are thus structural errors from which we may presume prejudice. *See McGurk v. Stenberg*, 163 F.3d 470, 474 (8th Cir. 1998). Respondent argues that, in light of the written jury waiver and the on-the-record colloquy between Lott, his counsel, and the trial court, Lott's appellate counsel

---

[10] Lott argues that the record presently lacks information concerning the "fact-intensive inquiries regarding counsel's ineffectiveness as cause," in part, because the district court refused to allow him to conduct discovery and present evidence at an evidentiary hearing on the question of counsel's ineffectiveness. Lott argues with some force that the district court faulted him for failing to put forward sufficient evidence demonstrating counsel's ineffectiveness as cause for his default of this issue, but then refused to allow him to take discovery as a means of obtaining the requisite information. Because we have already considered the propriety of the district court's refusal to allow Lott to conduct discovery and to hold an evidentiary hearing, we will not address it further here.

Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground. If an earlier opinion fairly appear[s] to rest primarily upon federal law, we will presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place. Similarly *where, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.*

501 U.S. 797, 803 (1991) (emphasis added) (internal citation and quotation marks omitted). The April 15, 1994, Court of Appeals's decision of Lott's *Murnahan* motion, in which the court concluded that "[c]learly, the appellant waived his right to a jury trial in a voluntary, knowing and intelligent fashion and the record further indicates that the appellant was fully aware of the circumstances and consequences of the waiver," predated the November 3, 1994, decision (and thus could not have been the *last* reasoned decision),[9] and, in any event, addressed only the merits of the ineffectiveness claim (and not the waiver claim). Absent a showing of cause and prejudice to excuse this procedural default, therefore, Lott may not now challenge the validity of his waiver.

---

[9] Lott is simply incorrect in his assertion that "[a]ny previous state court ruling regarding this ground does not apply because the last state court rendering a judgment -- the Cuyahoga County Court of Appeals -- reached the merits of this claim." The opinion concerning his *Murnahan* motion was actually decided in April 1994, *before* the Court of Appeals issued its November 1994 decision affirming the dismissal of his state post-conviction petition.

rights that he was giving up by foregoing a jury trial.[8] Specifically, the district court failed to inform Lott of the following: (1) that the waiver would apply to the mitigation phase; (2) that the concurrence of only three (rather than twelve) people would be sufficient to convict him; (3) that the concurrence of only three (rather than twelve) people would be sufficient to convict him of the death penalty specification; (4) that the concurrence of only three (rather than twelve) people would be sufficient to sentence him to death; (5) that there would be fewer appellate issues available to him, concerning, for example, jury selection, pre-trial motions, and jury instructions; and (6) that Lott could withdraw the jury waiver at any time.

Respondent contends that Lott's claim is procedurally barred, because he failed to raise this issue in his direct appeal, waiting instead until his state post-conviction action. As noted *supra* in the discussion concerning jurisdiction, Lott argued in his *Murnahan* motion that the Ohio Court of Appeals expressly found that "[a] review of the record

---

[8] In an attempt to cast further doubt on the voluntariness of his waiver, Lott points to "an uncontradicted affidavit" submitted during the pendency of his post-conviction action that stated that "Mr. Lott evidences personality and behavioral indicators of early life trauma and that people who experienced early life trauma frequently have organic brain damage which affects their mental ability, personality, behavior, and judgment." The import of this statement is not clear. Lott's counsel, without elaboration, suggests that Lott may have suffered "early life trauma," and that, if he did in fact suffer such trauma, he might have suffered brain damage that might have affected his mental ability in a way that might have some bearing on our resolution of this issue. Lott devotes a mere two sentences to this issue, and seems to request that we pile inference upon inference to conclude that his waiver was not knowing, intelligent, and voluntary. This we cannot do. While we do not take lightly any suggestion that Lott lacked the mental ability to understand the rights he was waiving, *see United States v. Martin*, 704 F.2d 267, 273 (6th Cir. 1983) (noting that a defendant should have the "the mental ability and some knowledge of the jury trial right before he is allowed to waive it"), we cannot conclude, however, on the basis of nothing more than a speculative injury (to which Lott's own counsel cannot attest) that Lott's waiver was not knowing, intelligent, and voluntary.

demonstrates that the appellant waived his right to a jury trial in conformity with Crim. R. 23(A) and R.C. 2945.05," suggesting that the Court of Appeals evaluated the merits of the waiver question (and thus did not raise a procedural bar to consideration of the issue). Respondent maintains that the Ohio Court of Appeals's discussion was in the context of an ineffective-assistance-of-appellate-counsel motion and came after three other state courts had already determined that the waiver claim was procedurally barred.

Respondent has the better of the argument. Lott is procedurally barred from raising this issue. Both the Cuyahoga County Common Pleas Court and the Cuyahoga County Court of Appeals concluded that Lott was procedurally barred from raising this claim, because he failed to raise it in his direct appeal. Lott, then, is left to argue that this claim is not procedurally barred -- either because he did raise the claim in his direct appeal, or because a state court, *subsequent to the Court of Appeals's finding of procedural default*, reached the merits of this claim -- or that he can demonstrate cause and prejudice to excuse the procedural default. Lott makes both arguments, but neither is availing.

### i. Whether claim is procedurally barred.

It is undisputed that Lott failed to raise the jury-waiver claim in his direct appeal. It appears that it was raised for the first time in his *Murnahan* motion, and there, only as the basis for his ineffective-assistance-of-appellate-counsel claim. Thus, the claim is procedurally barred, and absent a showing of cause and prejudice to excuse the default, we may not review the merits of this claim. Lott argues that, even if, on direct appeal, the Cuyahoga County Common Pleas Court and the Cuyahoga County Court of Appeals raised a procedural bar to this claim, the Cuyahoga County Court of Appeals's subsequent discussion of the merits of the issue, as it related to Lott's *Murnahan* motion, served to resurrect the otherwise defaulted claim. Respondent contends that the court's discussion in the *Murnahan* opinion addressed the merits of Lott's ineffective-assistance-of-appellate-counsel claim, and

not those of his waiver claim, and thus, there remains a procedural bar. Lott responds that it was precisely because his appellate counsel failed to raise the waiver issue in Lott's direct appeal that Lott was forced to argue it in the context of a *Murnahan* motion.

Although Lott's argument is not without force, it ultimately must fail. First, that a court, in reviewing a claim of ineffective assistance of counsel, looks to the merits of the alleged error for purposes of determining the existence of *Strickland* prejudice is not dispositive of the question whether a procedurally defaulted claim has been resurrected. As the district court correctly observed:

> [T]he fact that the state courts engaged in that analysis, as they must under *Strickland*, does not, however, serve as evidence that those courts *excused* the procedural default. To hold otherwise would eviscerate the continued vitality of the procedural default rule; every procedural default could be avoided, and federal court merits review guaranteed, by claims that every act giving rise to every procedural default was the result of constitutionally ineffective counsel.

Second, and of equal importance, even if we were to accept Lott's argument that the panel that reviewed his *Murnahan* motion evaluated the merits of his waiver claim -- a proposition that is flatly inconsistent with the record -- we would nevertheless be bound to accept as authoritative the "last reasoned opinion" concerning Lott's waiver claim, which was the 1994 Cuyahoga County Court of Appeals's decision of Lott's post-conviction petition that found Lott's waiver claim to be procedurally barred. *See State v. Lott*, Nos. 66388, 66389, 66390, 1994 WL 615012 (Ohio Ct. App. Nov. 3, 1994) ("[A]ppellant's claims alleging pre-trial error [including his waiver claim] are barred by application of the doctrine of res judicata."). In this regard, we are guided by the United States Supreme Court's decision in *Ylst v. Nunnemaker*, which established the following presumption: